UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

|  |  |  |
|---|---|---|
| SCOTT FORTUNA, | ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | |
| TOWN OF WINSLOW, WINSLOW SCHOOL COMMITTEE a/k/a WINSLOW SCHOOL BOARD, WINSLOW PUBLIC SCHOOLS, and PETER THIBOUTOT, as Superintendent and in his individual capacity, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

NOW COMES the Plaintiff, Scott Fortuna, by and through his undersigned Counsel and allege the following:

## I.   INTRODUCTION

1. This action for declaratory, injunctive and other appropriate relief is brought by Plaintiff Scott Fortuna to redress the intentional violations by Defendants and other of the rights secured to him by the laws of the United States of America.

2. Parents possess a fundamental right to make decisions concerning the medical care of their children. In Troxel v. Granville 530 U.S. 57, 65 (2000), the Supreme Court affirmed that "the interest of a parent in the care, custody and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court. Id. The Court continued:

> More than 75 years ago, in *Meyer* v. *Nebraska,* 262 U. S. 390, 399, 401

1

(1923), we held that the "liberty" protected by the Due Process Clause includes the right of parents to "establish a home and bring up children" and "to control the education of their own." Two years later, in *Pierce* v. *Society of Sisters,* 268 U. S. 510, 534-535 (1925), we again held that the "liberty of parents and guardians" includes the right "to direct the upbringing and education of children under their control." We explained in *Pierce* that "[t]he child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." *Id.,* at 535. We returned to the subject in *Prince* v. *Massachusetts,* 321 U. S. 158 (1944), and again confirmed that there is a constitutional dimension to the right of parents to direct the upbringing of their children. "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder. *Id.* at 65-66.

3.   On August 16, 2021, the Town of Winslow, (Winslow) by and through its School Board a/k/a School Committee, mandated under the auspices of medical intervention that all children wear masks while in school to protect them from Covid-19, specifically, the "Delta Variant."

4.   Winslow's mandate usurps Plaintiff's fundamental right to make health and educational decisions on behalf of his twelve-year-old daughter.

5.   According to the Centers for Disease Control (CDC), common influenza is a greater health threat to children than Covid-19; thus, it cannot be disputed that Covid-19 presents little, if any, health risk to children.

6.   In contrast, forcing young children to wear masks for eight hours a day while attending school distracts children from learning, increases levels of carbon dioxide in the blood, creates vectors for pathogens, and virtually eliminates non-verbal communication, harming phonetic development and damaging human connection.

7.   Put simply, it is Plaintiff's right to decide whether detrimental effects of

forcing his daughter to wear a mask outweigh the comparatively slight risk of becoming seriously ill from Covid-19.

8.   Maine law, including, but not limited to, 20-A M.R.S. § 5001-A requires Plaintiff's daughter to attend public school.

## II.   PARTIES

9.   Scott Fortuna is the father of A.F. and resides in the County of Penobscot and State of Maine.  A.F. is obligated to attend the Winslow Junior High School, a part of the Winslow Public Schools system in Winslow, Maine.

10.   The Town of Winslow is a municipality in the County of Kennebec and State of Maine.

11.   The Winslow School Committee a/k/a Winslow School Board (WSC) is a subdivision of the Town of Winslow and operates in the County of Kennebec and State of Maine.  All times material hereto, the WSC enjoyed policy-making authority and was acting under color of state law.

12.   Winslow Public Schools operates the Winslow Elementary, Winslow Junior High School, and Winslow High School, in Winslow, Maine.

13.   Peter Thiboutot, was at all times material acting under color of state law and served as the superintendent of the Winslow Public School.  Thiboutot at all times material enjoyed policy-making authority, including the unconstitutional polices alleged herein.

### III. JURISDICTION

14. Jurisdiction is conferred upon this court by the Fourteenth Amendment of the Constitution of the United States and 42 U.S.C. § 1983 which provide original jurisdiction for Plaintiff's claims.

15. Jurisdiction over the state law claims is based on the principles of supplemental jurisdiction, as codified at 28 U.S.C. § 1367.

16. The amount in controversy exceeds one hundred and fifty thousand dollars ($150,000).

### IV. VENUE

17. The Town of Winslow and the Winslow School Committee are located and operate in Kennebec County, Maine.  Kennebec County and Penobscot County are within the territorial jurisdiction of this Court.  This Court is therefore a proper venue for this action under 28 U.S.C. § 1391(b)(1)-(2).

### V. STATEMENT OF FACTS

**A. Background**

18. On or about May 13, 2021, the CDC determined that masks were not recommended for those twelve years of age or older who were fully vaccinated.

19. On July 9, 2021, the CDC stated that vaccinated teachers and students did not need to wear masks inside school buildings.

20. Three weeks later, the CDC recommended that vaccinated teachers and students should wear masks inside school buildings.

21. On August 1, 2021, the Winslow School Committee Superintendent, Peter

Thiboutot, posted a message on the School Committee webpage notifying parents, in pertinent part:

> One of the biggest changes the CDC has strongly recommended calls for universal indoor masking for all teachers, staff, students, and visitors to K-12 schools, regardless of vaccination status. Children should return to full-time in-person learning in the fall with layered prevention strategies in place.
> . . .
> The administrative team along with the school nurses and feedback from our Medical Provider met again this week to discuss the revised CDC recommendations. A unanimous decision was made to recommend to the board that we enact the CDC recommendations as a component of our return to school plan.

Full post available at: https://winslow.aos92.org/health-safety.

22. On August 16, the School Committee implemented a blanket mandatory mask policy requiring all children, <u>regardless of vaccination status, age, pre-existing medical condition, classroom size or age</u>, to wear masks while indoors indefinitely.

23. The School Committee implemented its mask policy arbitrarily and despite the CDC's finding that common influenza is a greater health threat to children than Covid-19.

24. Further, the School Committee implemented its mask policy without any consideration for the known negative effects posed by children wearing masks for eight hours a day while attempting to learn.

    **B.**    **There is No Evidence That the Delta Variant Poses An Increased Health Risk to Children Beyond the "Original" Covid-19 Strain**

25. According to Defendant's written statement set forth above, <u>the sole basis</u> for their August 16th mask mandate is the emergence of the Delta Variant; however, there

is no evidence whatsoever that the delta variant poses an increased risk to children, vaccinated or unvaccinated.

26.     The CDC reports that for the week of August 7 the rate of hospitalization *with* Covid for children 5 to 17 was 0.1 per 100,000. Further, the CDC acknowledges that not all of these children were in the hospital *for* Covid: Viral testing at admission is routine, even for patients who have no Covid symptoms. See Marty Makary and H. Cody Meissner, "The Case Against Masks for Children," Wall St. J. Aug. 8, 2021. For comparison purposes, the weekly peak for influenza hospitalization in 2020 was 2.3.

27.     Superintendent Thibutot aggrandizes the risk to children from Covid-19, especially after implementation of vaccines as noted in the below chart:



    **C.    Masks Are Not The Most Effective of Available Mitigation Techniques yet Pose The Most Adverse Side Effects In A School Setting**

28. It is undisputed that most effective mitigation technique to reduce the spread of covid-19 is physically distancing from one another; in the school setting, the CDC recommends three feet between students.

29. Spacing children three feet apart while seated in a classroom under a teacher's supervision is easily accomplished and, according to the CDC, prevents transmission of airborne virus particles.

30. Moreover, three feet of separation between students poses none of the negative effects associated with wearing a mask for eight hours a day.

31. Likewise, frequent hand washing, proper ventilation and voluntary vaccination all indisputably mitigate the spread of covid-19 and, unlike masking, do not negatively impact the physical or mental wellbeing of children during school.

32. In contrast, the first randomized controlled trial evaluating the effectiveness of face masks against SARS-CoV-2 were published in November of 2020. In that study, Danish scientists and physicians evaluated 6000 individuals at the University of Copenhagen, and concluded that wearing a high-quality surgical masks "did not reduce, at conventional levels of statistical significance, incident SARS-CoV-2 infection."

33. A May 21, 2020 New England Journal of Medicine article noted:

> We know that wearing a mask outside health care facilities offers little, if any protection from infection. Public health authorities define a significant exposure to Covid-19 as face-to-face contact within 6 feet with a patient with symptomatic Covid-19 that is

> sustained for at least a few minutes. . .The chance of catching Covid-19 from a passing interaction in a public space is therefore minimal.  ***In many cases, the desire for widespread masking is a reflexive reaction to anxiety over the pandemic.***

(emphasis added). Klompas, M.D. et al, <u>Universal Masking in Hospitals in the Covid-19 Era</u>, N.E.J.M. May 21, 2020.

34. In addition, SARS-CoV-2 particles are 0.06 to 0.125 microns in size, and masks and respirators filter particles 0.3 to .8 microns in size, therefore, masks cannot serve to effectively filter and protect from COVID-19.

35. Moreover, the imposition of facemasks on children inhibits the child's ability to learn, as well as imposes serious physical and psychological harm on the child. For instance, prolonged mask wearing has been shown to reduce oxygen intake and increase carbon dioxide intake.

36. In terms of the child's education, over 60% of interpersonal communication is conveyed by non-verbal behaviors, and the forced mask mandate removes the ability of a child to learn from non-verbal behaviors and instructions from their teacher and their peers.

37. In addition, vaccines have made the Covid-19 virus less lethal, but the risk of catching and dying from Covid-19 for someone under thirty years of age, even without the vaccine is less than .0001%.

38. A recent study funded by the National Institutes of Health and conducted by researchers from Rhode Island Hospital and Brown University found that "masks worn in public settings and in school or daycare settings may impact a range of early

developing skills, such as attachment, facial processing, and socioemotional processing." Sean Deoni et al., <u>Impact of the COVID-19 Pandemic on Early Child Cognitive Development: Initial Fundings in a Longitudinal Observational Study of Child Health</u>, August 10, 2021.

> **D. Mandating masks is akin to imposing a medical device, or medical intervention on a child, and as with any other similar procedure, requires parental consent.**

39.     A mask is akin to a medical device, such that mandating a mask on a child is akin to mandating a child wear a medical device.

40.     For any medical procedure, parental consent for a minor is obtained, however, and in the context of the School Committee's mask mandate, no such consent was allowed by having the parents choose whether to require their child to wear a mask.

> **E. Other Maine Schools Have voted to Make Mask Wearing Optional in for Children**

41.     The Town of Lewiston voted on August 3, 2021, to make mask wearing optional.  School Committee member Janet Beaudoin stated "I don't believe we, as a board, have a right to tell parents that in order for their children to attend public school in-person, that they need to wear a mask."

42.     On August 18, 2021, the Auburn and Hampden School Committees also voted to make masks optional for children.

**COUNT I**
**PLAINTIFF V. ALL DEFENDANTS**
**VIOLATION OF SUBSTANTIVE DUE PROCESS under 42 U.S.C. 1983**

43.     Plaintiff incorporates by reference paragraphs all preceding paragraphs as if

9

expressly set forth herein.

44. The Due Process Clause of the Fourteenth Amendment guarantees Plaintiff the fundamental liberty interest in the care, upbringing and education of his child. By extension, Plaintiff enjoys the fundamental right to make decisions concerning the medical care of his child.

45. Defendants, by enacting a blanket policy requiring mandatory masking of all children without substantive or temporal limitation, have infringed the Plaintiff's fundamental right.

46. Given the CDC's conclusion that the common flu is a greater threat to children than covid-19, the Defendants' policy at issue does not serve a compelling government interest. Stated another way, the government does not have interest in preventing coughs, sneezes and runny noses.

47. Moreover, even if the government had a legitimate interest in preventing coughs, sneezes and runny noses, the subject policy is not remotely narrowly tailored to achieve this end because it has no end date, no exceptions and may be accomplished by other means. By way of example, the policy could require masks when children are walking to and from classes but not while they are seated at their desks three feet apart.

48. Likewise, the policy cannot be rationally related to a legitimate government purpose as the efficacy of masks is a current subject of debate amongst experts. With this being said, the policy infringes Plaintiff's fundamental right and therefore must be subject to strict scrutiny. See, e.g., Branch v. Newsom, No. 20-56291, 2021 WL 3124310, at * 17 (9th Cir. July 23, 2021) ("governmental actions that infringe upon

a fundamental right receive strict scrutiny.")

49. Facing the continued COVID-19 outbreak, Winslow School Committee has reflexively acted to take what action *IT* deems necessary in *ITS* opinion to provide medical care for its students. However, as has been only too common since the Pandemic first began last March, it is clear that the Town of Winslow and the Winslow School Committee acted without regard for the Plaintiff's fundamental right in the care, upbringing and education of his daughter, including the right to make medical care decisions for his child. The Town of Winslow and the School Committee have thereby infringed and deprived the Plaintiff of his fundamental right under the Constitution.

50. The School Committee and the Town of Winslow may believe they have the police powers to make these decisions, however, the State of Emergency related to COVID-19 has expired in Maine. The Pandemic and its associated restrictions have been with us since March of 2020, and we now have a vaccine that has been widely used throughout Maine to protect against the disease.

51. As noted above, the common flu and other virus pose a far greater risk to children in school. This minimal risk to children must be balanced against the infringement of the parent's fundamental right to parent and to make medical decisions for their child. With the benefits of masking largely only providing a psychological benefit or a feeling of being protected, it is clear that the harm done to Plaintiff's fundamental rights in addition to the actual risks of causing psychological harm to the child and impairing the child's ability to learn, make it clear that the State does not satisfy even rational basis review to impose the mask mandates. However, because Plaintiff's

fundamental right to parent is infringed, this Court must impose strict scrutiny review, and it is clear that the mask mandates for children are not necessary to serve a compelling state interest.

## COUNT II
### PLAINTIFF V. ALL DEFENDANTS
### VIOLATION OF NATURAL RIGHT UNDER MAINE CONSITUTION AND MAINE LAW

52. Plaintiff incorporate all preceding paragraphs herein by reference.

53. Maine Statute provides that "parents are the joint and natural guardians of their minor children and are jointly entitled to the care, custody, control, services and earnings of their children."  19-A M.R.S. § 1651.

54. Maine Courts have recognized that the "natural right of a parent to the care and control of a child should be limited only for the most urgent reasons."  Merchant v. Bussell, 27 A.2d 816, 139 Me. 118 (1942) see also Pitts v. Moore, 2014 ME 59, ¶ 12, 90 A.3d 1166 ("When the State does interfere with the fundamental right to parent, we must evaluate that interference with strict scrutiny—the highest level of scrutiny—which "requires that the State's action be narrowly tailored to serve a compelling state interest.").

55. The Maine Legislature stated "[i]t is the intent of the Legislature that the control and management of the public schools shall be vested in the legislative and governing bodies of local school administrative units, as long as those units are in compliance with appropriate state statutes."  20-A M.R.S. § 2.

56. By enacting a mandatory mask policy, all Defendants have infringed Plaintiff's fundamental right to parent his child under State law. This has also exceeded and violated their mandate under Maine Law to enact policy that does not run counter to State law.

## COUNT III
## PLAINTIFF V. ALL DEFENDANTS
## PERMANENT INJUNCTION

57. Plaintiff incorporate all preceding paragraphs as if expressly set forth herein.

58. The mask mandate imposed by the Winslow School Board will cause Plaintiff irreparable injury.

59. Remedies, such as monetary damages are inadequate to compensate for that injury.

60. Considering the balance of the infringement of the Plaintiff's fundamental constitutional rights, a remedy in equity is warranted.

61. The public interest would not be disserved by a permanent injunction, rather the public would benefit by this Court upholding the Plaintiff's fundamental right to parent his child.

WHEREFORE, Plaintiff respectfully requests this Honorable Court:

    a. Enter a declaratory judgment that Defendant's acts complained of herein have violated and continue to violate the rights of Plaintiff.

    b.      Permanently enjoin Defendants from continued enforcement of their August 16, 2021 mask mandate as currently constructed;

    c.      Award Plaintiff compensatory damages including but not limited to: pain, suffering, past economic loss, future economic loss, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages;

    d.      Award reasonable costs and attorneys' fees;

    e.      Award punitive damages; and

    f.      Grant any other relief this Court deems just and proper under the circumstances.

## JURY DEMAND

Under the Seventh Amendment to the U.S Constitution and Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable.


DATED:  August 27, 2021           \_\_\_\_/s/ Stephen C. Smith_____
Stephen C. Smith, Esq., Bar No. 8720
John E. Baldacci, Jr., Esq., Bar No. 5773
Attorneys for Plaintiff
STEVE SMITH TRIAL LAWYERS
136 State Street, Second Floor
Augusta, ME 04330
207-622-3711
*Steve@MaineTrialLaw.Com*
*Jack@MaineTrialLaw.Com*


DATED:  August 27, 2021           \_\_\_\_\_/s/ Joseph Guzzardo_____
Joseph Guzzardo, Esq. Bar No. 6702

        Attorney for Plaintiff
        Guzzardo & Associates
        20 Mechanic Street, Suite 103
        Camden, ME
        (215) 718-6691
        *Jguzzardo@guzzardolaw.com*
        (*Pro Hac Vice Forthcoming*)