## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | | |
|---|---|---|
| SCOTT FORTUNA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **Case No. 1:21-cv-00248-JAW** |
| WINSLOW SCHOOL COMMITTEE a/k/a | ) | |
| WINSLOW SCHOOL BOARD, | ) | |
| WINSLOW PUBLIC SCHOOLS, and | ) | |
| PETER THIBOUTOT, as Superintendent | ) | |
| and in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM

## MOTION

Defendants Winslow Public Schools, Winslow School Board[1] and Superintendent Peter Thiboutot (collectively, the "School Defendants") move this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an Order dismissing all claims brought against them in Plaintiff Scott Fortuna's First Amended Complaint ("FAC") (ECF No. 18).  As set forth in the incorporated memorandum of law, the FAC fails to state a claim against the School Defendants upon which relief may be granted and, accordingly, the claim brought against them in Plaintiff's FAC must be dismissed.

---

[1] Plaintiff alleges that "the Winslow School Committee a/k/a Winslow School Board is a subdivision of the Town of Winslow."  FAC ¶ 10.  This allegation is wrong as a matter of law.  *Pickering v. Town of Sedgwick*, 628 A.2d 149, 150 (Me. 1993) (holding that "local school committees are agents of the state and are legally distinguished from municipalities"); *see also Sch. Comm. of Town of Winslow v. Inhabitants of Town of Winslow,* 404 A.2d 988, 992 (Me. 1972).  The Winslow School Committee and the Winslow School Board are collectively referred to herein as the Winslow School Department.

## INCORPORATED MEMORANDUM OF LAW

### INTRODUCTION

In this case, the Plaintiff, Scott Fortuna, seeks to have this Court intervene to overturn a decision made by the Winslow School Department to mandate masks inside its school buildings because he does not agree with it. Plaintiff disagrees not only with the decision of the Winslow School Department but also with the recommendations of the Centers for Disease Control ("CDC"), the Maine Centers for Disease Control ("Maine CDC"), and the Maine Department of Education ("MDOE"). In Plaintiff's view, COVID-19 is not particularly dangerous for children, *see, e.g.*, FAC ¶ 22,[2] whereas wearing a mask is, FAC ¶ 23. In support of his argument, Plaintiff relies on outdated studies, *e.g.*, FAC ¶ 25 (citing a study from 1992); FAC ¶ 35 (quoting an article from May 2020); FAC ¶ 42 (quoting a study from 2015)[3] and, confusingly, while he cites to the CDC's expertise at certain points (for example alleging that the CDC has stated that common influenza is a greater health threat to children than is COVID 19, FAC ¶ 22), he rejects the CDC's recommendation on mask use. In fact, the evidence from scientific and medical experts is overwhelming that mask use indoors – particularly in the school setting where a large percentage of the population is too young to be vaccinated – is an effective means of protecting against

---

[2] In making this allegation, Plaintiff ignores data establishing that although the majority of children do not develop the worst of COVID-19's symptoms, a certain percentage have died or been severely impacted. *See, e.g.*, *Resurrection Sch. v. Hertel*, 11 F.4th 437, 442 (6th Cir. 2021) ("[S]ix children ages 5-14 have died of COVID-19 in Michigan, and 1,280 children ages 0-17 have been hospitalized with COVID-19. One-hundred-and-sixty-one children in Michigan who recovered from COVID-19 went on to develop Multisystem Inflammatory Syndrome in Children ('MIS-C'), a condition causing inflammation and damage to organs. Children infected with COVID-19 can spread the disease to their parents and grandparents, teachers and school staff, and other medically vulnerable Michiganders." (citations omitted)).

[3] In addition to being outdated, the CDC has identified the 2015 study quoted in paragraph 42 of the FAC as one of "[t]wo studies [that] have been improperly characterized by some sources as showing that surgical or cloth masks offer no benefit." *Use of Cloth Masks to Control the Spread of SARS-CoV-2*, CDC (May 7, 2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-sars-cov2.html.

infection.  The United States CDC has so opined, the Maine CDC has so opined, and so have a host of other experts.

In the end, however, this Court need not rule on the efficacy of mask use in order to resolve this case.  In *Wood v. Strickland,* 420 U.S. 308 (1975), the United States Supreme Court warned that:

> It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion. . . .  The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members and [Section 1983] was not intended to be a vehicle for federal-court correction of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees.

*Id.* at 326; *see also Epperson* v. *Arkansas,* 393 U.S. 97, 104 (1968).   Plaintiff has pled no facts – nor could he – that could turn the School Defendants' decision to mandate masks for the protection of students, staff and the community into a violation of his constitutional rights.  His complaint should be dismissed.

## THE STANDARD OF REVIEW

"[A] complaint will survive a motion to dismiss when it alleges 'enough facts to state a claim to relief that is plausible on its face.'" *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "This plausibility standard is 'not akin to a "probability requirement"' but it 'demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'"  *Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth*., 4 F.4th 63, 70 (1st Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "'If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture,' dismissal is proper." *Alston*, 988 F.3d at 571 (quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010)).  In evaluating the sufficiency of the complaint, the

Court "need not credit a plaintiff's '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 678).

"In general, motions to dismiss under Rule 12(b)(6) are decided based solely on the face of the complaint, without consideration of any other documents." *Cebollero-Bertran*, 4 F.4th at 69 n.4.  There are, however, "[l]imited exceptions" to this rule, which permit a court to consider, among other things, "matters of public record subject to judicial notice." *Id.*; *see also Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013) (explaining that the exception for "official public records" permits the court to consider "documents or facts subject to judicial notice under Federal Rule of Evidence 201").  A fact may be judicially noticed under Federal Rule of Evidence 201 if it "is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  F.R. Evid. 201(b)(2).

The First Circuit and other courts have taken judicial notice of facts drawn from government websites and other government sources.  *See, e.g.*, *Montilla v. Fed. Nat'l Mortg. Ass'n*, 999 F.3d 751, 760 n.8 (1st Cir. 2021) (taking judicial notice of information in letter posted online by U.S. Department of the Treasury); *Parker v. Hurley*, 514 F.3d 87, 91 (1st Cir. 2008) (taking notice of statewide curricular standards adopted by Massachusetts State Board of Education); *Kater v. Church Downs Incorp.*, 886 F.3d 784, 788 n.3 (9th Cir. 2018) (taking judicial notice of various documents on state government website); *Jones v. Cuomo*, No. 20 CIV. 4898 (KPF), 2021 WL 2269551, at *1 (S.D.N.Y. June 2, 2021) (stating that "the Court may take judicial notice of 'documents retrieved from official government websites'" (quoting *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015))).  The School Defendants respectfully request that this Court take judicial notice of facts from the websites of the CDC, the Maine CDC and the MDOE, which are not subject to reasonable dispute because the accuracy of

the sources cannot reasonably be questioned.  *See Calm Ventures LLC v. Newsom*, -- F. Supp. 3d

--, No. CV2011501JFWPVCX, 2021 WL 3578309, at *4 (C.D. Cal. July 13, 2021) (taking judicial

notice of various documents consisting of information about the COVID-19 virus, including two

documents from the CDC), *appeal docketed*, No. 21-55892 (9th Cir. Aug. 19, 2021).

**STATEMENT OF FACTS**

A.      **COVID-19 and Masks**

As of October 31, 2021, a total of 104,259 Mainers have been infected with the COVID-

19 virus, 2,791 Mainers have been hospitalized, and 1,167 Mainers have lost their lives.  *COVID-*

*19:    Maine    Data*,    Maine    CDC,    https://www.maine.gov/dhhs/mecdc/infectious-

disease/epi/airborne/coronavirus/data.shtml (last visited Oct. 31, 2021).  As of October 18, 2021,

Maine CDC data showed that 20,827 Mainers between the ages of 0-19 had contracted the COVID-

19 virus.  *See COVID-19 and Youth in Maine: Data as of October 18, 2021*, Maine CDC (Oct. 18,

2021),    https://www.maine.gov/dhhs/mecdc/infectious-disease/epi/airborne/documents/COVID-

19-Youth-10-25.pdf (breaking down cases by age group).

> Children and adolescents can be infected with SARS-CoV-2, can get sick with
> COVID-19, and can spread the virus to others.  In the United States through March
> 2021, the estimated cumulative rates of SARS-CoV-2 infection and COVID-19
> symptomatic illness in children ages 5-17 years were comparable to infection and
> symptomatic illness rates in adults ages 18-49 and higher than rates in adults ages
> 50 and older.

*Transmission of SARS-CoV-2 in K-12 Schools*, CDC (July 9, 2021), https://www.cdc.gov/

coronavirus/2019-ncov/science/science-briefs/transmission_k_12_schools.html           (footnotes

omitted).  "Significant secondary transmission of SARS-CoV-2 infection has occurred in school

settings when prevention strategies are not implemented or are not followed."  *Id.*

The CDC recommendations in the K-12 school setting include promoting vaccination;

physical distancing; screening testing; ventilation; handwashing and respiratory etiquette; staying

5

home when sick and getting tested; contact tracing; and cleaning and disinfection.  *K-12 Schools*, CDC (Oct. 22, 2021), https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html.  In the FAC, Plaintiff acknowledges the efficacy of many of these measures.  *See* FAC ¶¶ 30-33.

In addition to these recommendations, the CDC also recognizes the efficacy of mask usage. As the CDC has explained, COVID-19 "infection is transmitted predominately by inhalation of respiratory droplets generated when people cough, sneeze, sing, talk, or breathe."  *Community Use of Cloth Masks to Control the Spread of SARS-CoV-2*, CDC (May 7, 2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-sars-cov2.html.  Multi-layer cloth masks provide protection to both the wearer and those around the wearer, and "[a]t least ten studies have confirmed the benefit of universal masking in community level analyses."  *Id.*[4]  Additionally,

> [r]esearch supports that mask wearing has no significant adverse health effects for wearers.  Studies of healthy hospital workers, older adults, and adults with COPD reported no change in oxygen or carbon dioxide levels while wearing a cloth or surgical mask either during rest or physical activity. . . . Additionally, no oxygen desaturation or respiratory distress was observed among children less than 2 years of age when masked during normal play.

*Id.*

"On July 27, 2021, CDC released updated guidance on the need for urgently increasing COVID-19 vaccination coverage and a recommendation for everyone in areas of substantial or high transmission to wear a mask in public indoor places, even if they are fully vaccinated."  *Delta*

---

[4] The Sixth Circuit recently relied on this same CDC Science Brief to conclude that "universal community use of masks is a widely accepted method to prevent the spread of COVID-19," despite the plaintiff's contrary contentions in their complaint.  *Resurrection Sch. v. Hertel*, 11 F.4th 437, 442 (6th Cir. 2021) (citing *Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2*, CDC (May 7, 2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-sars-cov2.html).

*Variant*, CDC (Aug. 26, 2021), https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html. Several "concerning developments" led the CDC to issue the new guidance, including "new data . . . [indicating] that the Delta variant [of COVID-19] was more infectious and was leading to increased transmissibility when compared with other variants, even in some vaccinated individuals." *Id.* The CDC also updated its guidance for K-12 schools "to recommend universal indoor masking for all students, staff, teachers, and visitors to K-12 schools, regardless of vaccination status." *K-12 Schools, Updates as of August 4, 2021*, CDC (Oct. 22, 2021), https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html.[5]

The Maine DOE has recommended that schools in our state follow CDC guidelines. *See Priority Notice: Health and Safety Guidance for PreK-12 Schools in Maine*, Maine DOE, https://mailchi.mp/maine/cu5lemqy6y0-1323560?e=b687676d5b (last visited Oct. 31, 2021) ("[O]ur state will continue to adhere to the US CDC's 'Guidance for COVID-19 Prevention in K-12 Schools.'"); *Frequently Asked Questions Regarding COVID-19 and Return to School*, Maine DOE, at 3 (Aug. 2, 2021), https://www.maine.gov/doe/sites/maine.gov.doe/files/2021-08/Q%26A%20webinar%207.29.21.pdf ("Maine CDC recommends that school district[s] follow the U.S. CDC recommendation that all students, staff, teachers, and visitors wear a mask while indoors in schools."). Further, the Maine CDC and Maine DOE have mandated that all close contacts of individuals who test positive for COVID-19 must quarantine from school and school activities for ten days unless the school has a mandatory masking policy. *Standard Operating Procedures (SOP): Investigation of COVID-19 in Pre-K-12 Schools*, Maine CDC, at 7 (Aug. 26, 2021, updated Oct. 29, 2021), https://www.maine.gov/doe/sites/maine.gov.doe/files/inline-

---

[5] In addition to being judicially noticeable, this guidance may be considered because it is referenced in the Complaint. *See* FAC ¶ 19; *Freeman*, 714 F.3d at 36 (court may consider "documents sufficiently referred to in the complaint" when deciding motion to dismiss).

files/SOP%20Investigating%20Outbreaks%20in%20K-12%20Schools%2010%2029%202021. docx.pdf.   In schools with mandatory masking policies a student exposed in the classroom does not need to quarantine if the student was at least 3 feet from the exposed individual.  *Id.*  The practical effect of this rule is that schools without mask mandates will be required to move groups of students or, in some circumstances, entire classrooms to remote learning for ten days any time there has been an exposure, whereas those with mask mandates will not.  *Id.* at 5-7.

### B.      The Winslow Mask Mandate

Kennebec County, where the Town of Winslow is located, FAC ¶ 10, is classified as an area of high transmission for the time period from October 23, 2021, to October 29, 2021.  *COVID Data Tracker, Kennebec County, Maine*, CDC, https://covid.cdc.gov/covid-data-tracker/#county-view|Maine|23011|Risk|community_transmission_level (last visited Oct. 31, 2021). On August 1, 2021, Superintendent Peter Thiboutot posted a message on the School Department website noting, among other things, that "the CDC has strongly recommended calls for universal indoor masking for all teachers, staff, students, and visitors to K-12 schools" and concluding that his administrative team, together with school nurses and with feedback from the School Department's medical provider, had unanimously recommended requiring masks.  FAC ¶ 20.  Thereafter, on August 16, 2021, following CDC's issuance of updated guidance recommending universal masking in K-12 schools, the Winslow School Board implemented a policy requiring all children, regardless of vaccination status, to wear masks while indoors.  FAC ¶ 21.

### C.      Procedural History

Plaintiff filed his initial three count complaint on August 27. 2021 (Doc. 1).  Count I of that complaint was a claim for violation of Plaintiff's substantive due process rights under Section 1983; Count II was a claim for violation of the Maine Constitution and Count III was a claim for

"Permanent Injunction."   The School Defendants, the Winslow School Department and its Superintendent Peter Thiboutot, responded with a motion to dismiss the complaint for failure to state a claim on September 7, 2021 (Doc. 10).   Plaintiff's deadline to respond to the motion to dismiss was extended by agreement of the parties to November 4, 2021 (Doc. 12).   However, on October 28, 2021, a few days before that response deadline, Plaintiff filed the FAC in which he eliminated the claims set forth in Counts II and III of his initial complaint and added a few allegations about the role he believes that the national teachers union had in the CDC's guidance on mask wearing.   None of these amendments cures the initial infirmities of the complaint and the FAC should therefore be dismissed.

## ARGUMENT

### I.   The First Amended Complaint Fails to State a Claim Against the Winslow School Department for Violation of Plaintiff's Substantive Due Process Rights.

Count I, the sole count in the FAC, is a claim under 43 U.S.C. § 1983 for violation of the Plaintiff's substantive due process rights. "Substantive due process is a constitutional cause of action that leaves the door 'slightly ajar for federal relief in truly horrendous situations.'"   *Clark v. Boscher*, 514 F.3d 107, 112 (1st Cir. 2008) (quoting *Néstor Colón-Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 45 (1st Cir. 1992)).   "[A]n abuse of power practiced by the executive branch of state government sinks to a level cognizable under the Due Process Clause only when it is so extreme and egregious as to shock the contemporary conscience."   *DePoutot v. Raffaelly*, 424 F.3d 112, 118 (1st Cir. 2005).   Thus,

> Executive acts that shock the conscience must be "truly outrageous, uncivilized, and intolerable," *Hasenfus v. LaJeunesse*, 175 F.3d 68, 72 (1st Cir. 1999), and "the requisite arbitrariness and caprice must be stunning, evidencing more than humdrum legal error," *Amsden v. Moran*, 904 F.2d 748, 754 n. 5 (1st Cir. 1990). Indeed, "[a] hallmark of successful challenges is an extreme lack of proportionality, as the test is primarily concerned with violations of personal rights so severe[,] so disproportionate to the need presented, and so inspired by malice or sadism rather

9

> than a merely careless or unwise excess of zeal that it amounted to a brutal and
> inhumane abuse of official power literally shocking to the conscience." *González-
> Fuentes v. Molina*, 607 F.3d 864, 881 (1st Cir. 2010) (internal quotation marks and
> ellipses omitted).

*Harron v. Town of Franklin*, 660 F.3d 531, 536 (1st Cir. 2011); *see also Martínez v. Cui*, 608 F.3d

54, 65 (1st Cir. 2010) ("The conscience-shocking test is . . . an essential part of any substantive

due process claim against a government actor."). "Only after 'show[ing] a constitutionally

significant level of culpability' may a plaintiff 'turn to establishing that a protected right was

offended.'" *Abdisamad v. City of Lewiston*, 960 F.3d 56, 60 (1st Cir. 2020) (quoting *Martínez*,

608 F.3d at 65).

   In this case, there can be no serious contention that Plaintiff has alleged conduct on the part

of the School Defendants that is conscience-shocking.  Rather, the Complaint alleges that Winslow

Public Schools followed guidance from the CDC by adopting a policy requiring its students to

wear masks indoors.  FAC ¶¶ 19-21.  This is consistent with the conduct of public and private

entities throughout the State of Maine and across the country and does not even come close to

meeting the conscience shocking standard.  This is true despite the new allegation set forth in the

FAC that the CDC released updated masking guidelines recommending universal masking the day

after receiving an email from the National Education Association "indicating that it was prepared

to criticize the CDC's decision [not to recommend masks for fully vaccinated students] and calling

for updated guidance that masks should be worn specifically in schools."  FAC ¶¶ 17-19.

   First, correlation does not equal causation.  *See*, *e.g.*, *Samaan v. St. Joseph Hosp.*, 670 F.3d

21, 33 (1st Cir. 2012) ("Correlation is not causation."); *Norris v. Baxter Healthcare Corp.*, 397

F.3d 878, 885 (10th Cir. 2005) ("A correlation does not equal causation.").  Plaintiff's speculative

allegation must give way to the judicially noticeable facts discussed above, which show that the

CDC changed its guidance based on several "concerning developments" resulting from the spread

of the Delta variant. *Delta Variant*, CDC (Aug. 26, 2021), https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html. But even if the CDC's decision to recommend universal masking in schools *was* influenced by the alleged National Education Association email, that would not make it any less reasonable for the Winslow School Department to rely on the CDC's recommendations in formulating its mask policy. The allegation that the COVID-19 virus does not pose a significant health threat to children is untrue and implausible, as evidenced by the judicially noticeable facts discussed above. *See Resurrection Sch. v. Hertel*, 11 F.4th 437, 442 (6th Cir. 2021) (crediting judicially noticeable facts from CDC over plaintiffs' contrary allegations). The mask policy is plainly proportional to the risk posed to students by the COVID-19 virus, and it plainly does not amount to "a brutal and inhumane abuse of official power literally shocking to the conscience." *Harron*, 660 F.3d at 536.

Additionally, Plaintiff's substantive due process claim is precluded under the standard set forth in the Supreme Court's decision in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905). Many federal courts have concluded that *Jacobson* applies to substantive due process claims challenging government action taken in response to the coronavirus pandemic. *See, e.g.*, *Klaassen v. Trustees of Indiana Univ.*, 7 F.4th 592 (7th Cir. 2021) (applying *Jacobson* to substantive due process claim involving mandatory vaccinations); *Forbes v. Cty. of San Diego*, No. 20-CV-00998-BAS-JLB, 2021 WL 843175, at *4 (S.D. Cal. Mar. 4, 2021) (applying *Jacobson* to substantive due process claim involving mask mandate); *Hopkins Hawley LLC v. Cuomo*, No. 20-CV-10932 (PAC), 2021 WL 465437, at *5 (S.D.N.Y. Feb. 9, 2021) (applying *Jacobson* to substantive due process claim involving restrictions on restaurant dining).

In *Jacobson*, the Supreme Court held that a law enacted to protect public health during a public health crisis survives constitutional scrutiny unless it "has no real or substantial relation" to

the protection of public health "or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *Jacobson*, 197 U.S. at 31. It thus upheld a Massachusetts law requiring mandatory vaccination against smallpox that had been challenged on substantive due process grounds because, it held, the law "cannot be affirmed to be, beyond question, in palpable conflict with the Constitution. Nor, in view of the methods employed to stamp out the disease of smallpox, can anyone confidently assert that the means prescribed by the State to that end has no real or substantial relation to the protection of the public health and the public safety." *Id.* In this case, it is clear based on the CDC data and guidance discussed above that wearing masks has a substantial relationship to preventing transmission of the COVID-19 virus. Nor has Plaintiff plausibly pled facts upon which one could <u>confidently</u> assert that mask wearing has <u>no</u> real relationship to the protection of the public.

Finally, even if *Jacobson* does not apply, despite Plaintiff's efforts to ground his claim on a parent's "fundamental right in the care, upbringing and education of his daughter, including the right to make medical care decisions for his child," FAC ¶ 56, the mask policy is still only subject to rational basis review. It is true, as Plaintiff contends, that the "liberties protected by the Due Process Clause include 'the fundamental right of parents to make decisions concerning the care, custody, and control of their children,'" *Tower v. Leslie-Brown*, 326 F.3d 290, 298 (1st Cir. 2003) (quoting *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000)), and that the Supreme Court has recognized "a general liberty interest in refusing medical treatment." *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278 (1990). Plaintiff's Complaint, however, fails to plausibly plead that the mask policy directly infringes on either of those rights.[6] *See W.S. by Sonderman v. Ragsdale*, No. 1:21-CV-01560-TWT, 2021 WL 2024687, at *2 (N.D. Ga. May 12, 2021) ("Rational basis is

---

[6] Indeed, by pleading that a mask is "akin to a medical device," FAC ¶ 43, Plaintiff essentially admits that a mask is <u>not</u> a medical device.

the proper standard of review for the mask mandate. The mandate neither discriminates against a protected class nor infringes a fundamental right."); *see also Mass. Corr. Officers Federated Union v. Baker*, -- F. Supp. 3d --, No. 21-11599-TSH, 2021 WL 4822154, at *7 (D. Mass. Oct. 15, 2021) ("*Jacobson* and recent cases show that declining a vaccine does not give rise to a fundamental right and rational basis scrutiny will apply."); *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 461 (2d Cir. 1996) ("[W]hile parents have definite rights over their children's education, 'they have no constitutional right to provide their children with . . . education unfettered by reasonable government regulation.'" (quoting *Runyon v. McCrary*, 427 U.S. 160, 178 (1976))).

Under rational basis review, Plaintiff must show that the alleged "governmental infringement is not rationally related to a legitimate government purpose." *Mulero-Carrillo v. Román-Hernández*, 790 F.3d 99, 107 (1st Cir. 2015). Preventing the transmission of COVID-19 is, at the very least, a legitimate government purpose. *See Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) ("Stemming the spread of COVID-19 is unquestionably a compelling interest . . . ."). And, as discussed above, CDC guidance and the studies and data upon which that guidance is based show that universal masking is rationally related to this goal. In addition, decreasing the risk that entire classes will be required to move to remote learning every time there is an exposure in a classroom is a legitimate governmental purpose, and given the Maine DOE rules, a universal mask mandate is rationally related to this goal. Accordingly, the mask policy easily passes muster under rational basis review.

## II.    The First Amended Complaint Fails to State a Claim Against Peter Thiboutot for Violation of Plaintiff's Substantive Due Process Rights.

The FAC indicates that Peter Thiboutot is sued "as Superintendent" of Winslow Public Schools and also "in his individual capacity." FAC at 1. "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law."

13

*Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Official-capacity suits, on the other hand, "generally represent only another way of pleading an action against an entity of which an [employee] is an agent." *Id.* (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). Accordingly, to the extent Mr. Thiboutot is sued in his official capacity, the claims against him should be dismissed for the reasons discussed above.

To the extent Mr. Thiboutot is sued in his personal capacity, the FAC fails to state a plausible substantive due process claim against him. The FAC alleges that Mr. Thiboutot posted a message on the Winslow Public Schools webpage notifying parents that the "administrative team" had unanimously decided "to recommend to the [school] board that we enact the CDC recommendations" regarding universal masking in K-12 schools "as a component of our return to school plan." FAC ¶ 20. This act plainly does not rise to the level of conscience shocking because it does not even come close to being "truly outrageous, uncivilized, and intolerable," *see Harron*, 660 F.3d at 536 (quoting *Hasenfus*, 175 F.3d at 72)[7], nor does it infringe upon any fundamental right, *see supra* Section I. The FAC does not allege any other facts specific to Mr. Thiboutot. Accordingly, the FAC fails to state a personal-capacity claim against Mr. Thiboutot for violation of Plaintiff's substantive due process rights.

## CONCLUSION

For the foregoing reasons, Plaintiff Scott Fortuna's First Amended Complaint fails to state a claim against Winslow Public Schools, the Winslow School Board, or Superintendent Peter

---

[7] "Examples of conduct that the First Circuit has found to be conscience shocking include the intentional 'framing of innocent citizens for serious crimes they did not commit,' and cases involving 'extreme or intrusive physical contact.'" *Esposito v. Town of N. Providence*, No. C A 04-302S, 2006 WL 2711736, at *12 (D.R.I. Sept. 21, 2006) (citations omitted) (quoting *Limone v. Condon*, 372 F.3d 39, 45 (1st Cir. 2004) and *Souza v. Pina*, 53 F.3d 423, 427 (1st Cir. 1995), respectively).

Thiboutot upon which relief may be granted.  Accordingly, the School Defendants respectfully request that the Court grant their Motion to Dismiss.

Dated: November 1, 2021                    */s/ Melissa A. Hewey*

                                           Melissa A. Hewey
                                           Sara P. Cressey
                                           *Counsel for Defendants Winslow Public Schools,*
                                           *Winslow School Board, and Peter Thiboutot*

DRUMMOND WOODSUM
84 Marginal Way, Suite 600
Portland, Maine 04101-2480
(207) 772-1941
mhewey@dwmlaw.com
scressey@dwmlaw.com