UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

SCOTT FORTUNA            )
                       )
        Plaintiff,       )
                       )
       v.            )     No. 1:21-cv-00248-JAW
                       )
TOWN OF WINSLOW, et al.   )
                       )
        Defendants.    )

## ORDER ON MOTION TO DISMISS

A plaintiff parent of a junior high student brings a substantive due process challenge seeking declaratory, injunctive, and other relief, including compensatory and punitive damages, from a school district COVID-19 prevention measure requiring all students to wear masks while at school.  The school defendants enacted the mask policy before the start of the 2021-2022 school year and recently amended it to make masks optional.  The school defendants seek to dismiss the plaintiff's claim on the ground that the plaintiff failed to implicate a fundamental right or state a cognizable "conscious-shocking" due process violation, and because the mask policy, enacted pursuant to public health guidance, was rationally related to the legitimate government purpose of mitigating student risk and minimizing learning disruptions during an unprecedented pandemic.  The Court concludes that the plaintiff failed to allege facts sufficient to survive dismissal.

## I.     PROCEDURAL HISTORY

On August 27, 2021, Scott Fortuna filed a three count complaint against the town of Winslow, Maine, Winslow Public Schools, Superintendent Peter Thiboutot,

and the Winslow School Committee (the School Defendants). *Compl.* (ECF No. 1). On September 7, 2021, the School Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Mot. to Dismiss for Failure to State a Claim of Defs. Winslow Public Schools, Winslow School Board, and Peter Thiboutot* (ECF No. 10). On September 20, 2021, Mr. Fortuna filed an unopposed motion to dismiss without prejudice the claims against the town of Winslow, which the Court granted. *Pl.'s Mot. for Leave to Dismiss Town of Winslow Without Prejudice* (ECF No. 14); *Order* (ECF No. 15).

On October 28, 2021, Mr. Fortuna filed an amended complaint in which he abandoned Counts II and III. *First Am. Compl.* (ECF No. 18) (*First Am. Compl.*). On November 1, 2021, the School Defendants withdrew their earlier motion and filed a new motion to dismiss Mr. Fortuna's first amended complaint. *Defs.' Withdrawal of Mot. to Dismiss Compl. for Failure to State a Claim* (ECF No. 20); *Defs.' Mot. to Dismiss First Am. Compl. for Failure to State a Claim* (ECF No. 21) (*Defs.' Mot.*). On November 15, 2021, Mr. Fortuna filed his response in opposition to the School Defendants' motion to dismiss. *Pl.'s Opp'n to Defs.' Mot. to Dismiss* (ECF No. 22) (*Pl.'s Opp'n*). The School Defendants replied on November 22, 2021. *Defs.' Reply in Supp. of Mot. to Dismiss* (ECF No. 23) (*Defs.' Reply*).

On February 24, 2022, Mr. Fortuna filed a motion to amend, attaching his proposed second amended complaint. *Mot. for Leave to File Second Am. Compl.* (ECF No. 25) (*Pl.'s Mot. to Amend*); *see id.*, Attach. 1, *Pl.'s Second Am. Compl.* On February 25, 2022, the School Defendants responded in opposition to Mr. Fortuna's request to

amend.  *Defs.' Opp'n to Pl.'s Mot. for Leave to File Second Am. Compl.* (ECF No. 26) (*Defs.' Opp'n to Mot. to Amend*).  Mr. Fortuna filed his reply on March 3, 2022.  *Pl.'s Reply to Defs.' Opp'n to Mot. to File Second Am. Compl.* (ECF No. 27) (*Pl.'s Reply in Supp. of Mot. to Amend*).

On March 10, 2022, the Court ordered the parties to update the record on whether the School Defendants had recently lifted the mask mandate by making mask wearing optional in Winslow Schools.  *Order* (ECF No. 29).  On March 11, 2022, the School Defendants responded that:

> On Monday, March 7, 2022, the Winslow School Board voted to make masks optional in the Winslow Public Schools based on updated guidance from the Maine Department of Education and public health authorities.
>
> The new optional mask policy took effect on Wednesday, March 9, 2022.

*Resp. to Ct.'s Order* at 1 (ECF No. 30).  Counsel for the parties "agreed that this change in the Winslow Public Schools mask policy does not render this case, or the pending motions, moot because the Winslow Public Schools could reimpose a mandatory masking policy if guidance from public health authorities changed again."[1]  *Id.*

---

[1]    The Court accepts the parties' agreement on this point for purposes of the pending motion to dismiss.  However, the Court is skeptical about whether this mootness stipulation is sustainable.  If the parties are stipulating about the current state of the pandemic, they have already agreed that masks are currently optional for Winslow Public School students.  If they are stipulating about the future course of the COVID-19 pandemic, there is no evidence in this record that the School Defendants are likely to reimpose the same mandatory masking policy.  If and when a new form of pandemic visits its troubles upon the world, it is unlikely to come in the exact form of the COVID-19 pandemic.  Whether masks will be required of school children at some point in the future would depend on an array of factors not now before the Court and to stipulate otherwise seems speculative at best.  *See Calvary Chapel of Bangor v. Mills*, 542 F. Supp. 3d 24, 38 (D. Me. 2021) ("Given the current lack of restrictions, a court order granting the relief sought in the Complaint would be meaningless") (citing *D.H.L. Assocs., Inc. v. O'Gorman*, 199 F.3d 50, 54 (1st Cir. 1999) ("[W]e are without power to grant injunctive and declaratory relief because the [challenged] ordinances no longer exist")).

On March 22, 2022, the Court granted Mr. Fortuna's request to amend his complaint to add additional factual allegations and a specific assertion that even if the school district modifies its recommendations on universal masking, there is a likelihood it will reimpose the masking mandate in the future. *Order on Mot. to Amend* at 8-9 (ECF No. 31). On March 24, 2022, the parties advised the Court that they wished to maintain their briefing on the motion to dismiss as currently filed. *Joint Resp. to Ct.'s Order* (ECF No. 32). On April 19, 2022, Mr. Fortuna filed his Second Amended Complaint pursuant to the Court's order granting him leave to amend. *Pl.'s Second Am. Compl.* (*Second Am. Compl.*) (ECF No. 36). The School Defendants responded by renewing the arguments made in their motion to dismiss and reply to Mr. Fortuna's motion to amend. *Renewal of Mot. to Dismiss* (ECF No. 38).

## II.    THE FACTS

### A.    Judicially Noticeable Public Health Data

The Court must first consider what it may consider. The standards for resolving a motion to dismiss are familiar. Consistent with Federal Rule of Civil Procedure 12(b)(6), when deciding a motion to dismiss, a court "accept[s] all well-pleaded facts in the complaint as true." *Gilk v. Cunniffe*, 655 F.3d 78, 79 (1st Cir. 2011) (quoting *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 36 (1st Cir. 2009)). A court

---

The Court, however, does not have to resolve this issue because Mr. Fortuna's claim for damages for injuries under the past mandate is sufficient for the Court to consider that claim for relief an actual case or controversy. *See* U.S. CONST. Art. III, § 2; 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought"); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007).

also "construe[s] all reasonable inferences in favor of the plaintiff . . .." *Sanchez*, 590 F.3d at 41 (quoting *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) and citing *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 320 (1st Cir. 2008)).

Under the general rule, a court must decide a motion to dismiss "solely on the face of the complaint, without any consideration of any other documents." *Cebollero-Bertran v. P.R. Aqueduct and Sewer Auth.*, 4 F.4th 63, 69 n.4 (1st Cir. 2021); *Doe v. Pawtucket Sch. Dep't*, 969 F.3d 1, 8 (1st Cir. 2020). Two exceptions to the general rule are material here. The first is that a court may consider "documents attached to the complaint or incorporated by reference therein." *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 231 (1st Cir. 2013). This exception is sufficiently broad to capture documents "integral to or explicitly relied upon in the complaint, even though not attached to the complaint." *Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000).

A second exception permits consideration of "matters of public record." *Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013); *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011). The First Circuit has observed that the phrase "official public records" appears "limited, or nearly so, to documents or facts subject to judicial notice under Federal Rule of Evidence 201." *Freeman*, 714 F.3d at 36. With this background, the Court turns to the positions of the parties.

The School Defendants urge the Court to adopt the approach of the District Court for the Central District of California to "take judicial notice of facts from the

5

websites of the Centers for Disease Control (CDC), the Maine CDC and the MDOE [Maine Department of Education]." *Defs.' Mot.* at 4-5.  In *Calm Ventures LLC v. Newsom*, 548 F. Supp. 3d 966 (C.D. Cal. 2021), California's governor and attorney general, seeking dismissal of a challenge to statewide COVID-19 restrictions, urged the district court to take judicial notice of government sources of information about the COVID-19 pandemic, including the CDC's "COVID Data Tracker and its publicly reported data," California's own COVID-19 statistics, and a CDC Science Brief.  *Id.* at 974.  Over the plaintiff's objection that incorporating this information would "convert a motion to dismiss into a motion for summary judgment," the district court granted the government defendants' request for judicial notice of documents in the public record, pursuant to Federal Rule of Evidence 201.  *Id.*

In *Gent v. CUNA Mutual Insurance Society*, 611 F.3d 79 (1st Cir. 2010), the First Circuit incorporated information from the CDC website in its affirmance on a motion to dismiss, explaining that "we take judicial notice of the relevant facts provided on the [CDC] website, which are 'not subject to reasonable dispute.'"  *Id.* at 84 n.5 (citing FED. R. EVID. 201(b), (f); *Denius v. Dunlap*, 330 F.3d 919, 926-27 (7th Cir. 2003) (taking judicial notice of information from an official government website)).

Recently, courts in this District have incorporated information from the Maine CDC's daily case counts and Maine's COVID-19 Vaccination Dashboard in orders related to COVID-19 public health restrictions.  *See Cavalry Chapel of Bangor v. Mills*, 542 F. Supp. 3d 24, 27-28 & n.4 (D. Me. 2021) (on a motion to dismiss, taking "judicial notice of matters appearing on an official government website, which are not

6

subject to reasonable dispute") (citing *Gent*, 611 F.3d at 84 n.5); *see also Doe v. Mills*, No. 1:21-cv-00242-JDL, 2021 U.S. Dist. LEXIS 197251, at *3 (D. Me. Oct. 13, 2021) *aff'd*, 16 F.4th 20 (1st Cir. 2021) (taking "judicial notice of certain additional facts pertinent to the Motion [for preliminary injunction]," including from CDC publications) (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 20 (1st Cir. 2003); *Loucka v. Lincoln Nat'l Life Ins. Co.*, 334 F. Supp. 3d 1, 8-9 (D.D.C. 2018) ("[T]he CDC's Lyme-testing criteria and procedures are a matter of public record, and it cannot be reasonably questioned that the agency's website is an accurate source for those standards")).

Throughout the COVID-19 pandemic, "[c]ourts presiding over similar cases have taken judicial notice of Public Health Orders and scientific consensus regarding the coronavirus." *Legacy Church, Inc. v. Kunkel*, 472 F. Supp. 3d 926, 1066-67 (D.N.M. 2020) ("Public Health Orders are noticeable, because they are generally known with[in] the District of New Mexico, readily determined from the New Mexico Department of Health, and there is no dispute that the Public Health Orders accurately reflect New Mexico's COVID-19-related restrictions and guidelines"), *aff'd sub nom. Legacy Church, Inc. v. Collins*, 853 F. App'x 316 (10th Cir. 2021) (unpublished); *see, e.g.*, *Givens v. Newsom*, 459 F. Supp. 3d 1302, 1309 (E.D. Cal. 2020) (taking judicial notice of "the contents of [Public Health Orders from other states and municipalities], not the truth of those contents"); *Basank v. Decker*, 449 F. Supp. 3d 205, 211-12 (S.D.N.Y. 2020) (taking judicial notice of COVID-19's public health risks).

Here, the Court draws the relevant facts from the Second Amended Complaint and further concludes that it can take judicial notice of information from the official CDC and Maine CDC government websites that is "not subject to reasonable dispute." *Gent*, 611 F.3d at 84 n.5 (quoting FED. R. EVID. 201(b), (f) and citing *Denius*, 330 F.3d at 926-27); *see also In re Colonial Mortg. Bankers Corp.*, 324 F.3d at 20 (noting that although a district court is generally limited to examining the record on a motion to dismiss, it may also consider "the documents incorporated by reference in it, matters of public record, and other matters susceptible to judicial notice"); *Murphy v. Lamont*, No. 3:20-CV-0694 (JCH), 2020 U.S. Dist. LEXIS 136961, at *25 n.14 (D. Conn. Aug. 3, 2020) ("The CDC is the nation's healthcare protection agency.  The court takes judicial notice of CDC's various COVID-19-related postings and guidance").

As "government publications are matters of public record" and thus "proper subjects of judicial notice," in accordance with precedent from other courts, the Court augments Mr. Fortuna's Second Amended Complaint with the dates and contents of official CDC guidance publications and other epidemiological data from the CDC and Maine CDC that are not in dispute.  *McGhee v. City of Flagstaff*, No. CV-20-08081-PCT-GMS, 2020 U.S. Dist. LEXIS 81370, at *6 (D. Ariz. May 8, 2020) ("To avoid taking judicial notice of disputable facts within matters of public records, the Court limits its judicial notice of the proposed publications to their existence and that they contain the purported statements") (citing *Gent*, 611 F.3d at 84 n.5 (1st Cir. 2010)).

Moreover, the Court considers the CDC website under the "referred to" rubric because in his Second Amended Complaint, Mr. Fortuna repeatedly refers to CDC

guidance, released via its website. *Am. Compl.* ¶¶ 5, 17-20, 22, 28, 30-31, 45, 61, and 69. In the Court's view, these references in the Second Amended Complaint are sufficient to allow the Court to consider the CDC website itself.

However, in accordance with Federal Rule of Civil Procedure 12(b)(6), the Court does not incorporate the basis for the CDC's scientific conclusions or public health research that may be contradictory or disputed by Mr. Fortuna. Such factual analysis is reserved for a motion for summary judgment. *See McGhee*, 2020 U.S. Dist. LEXIS 81370, at *6 (noting that, on a motion to dismiss a challenge to a mask mandate enacted pursuant to official CDC guidance, such government publications are relevant "not for the truth of what they assert, but for their existence"); *see also Megeso-William-Alan v. Ige*, 538 F. Supp. 3d 1063, 1068 n.3 (D. Haw. 2021) ("In ruling on the Moving Defendants' motions [to dismiss], the court can consider the various releases posted on the CDC's website" as "[t]he fact that the CDC actually released the statements cited by the court cannot be reasonably disputed").

### B.    The Parties

Scott Fortuna is the father of A.F. and a resident of Penobscot County, Maine. *Second Am. Compl.* ¶ 9. Pursuant to Maine law, A.F. is obligated to attend the Winslow Junior High School, which is part of the Winslow Public Schools system in Winslow, Maine. *Id.* ¶¶ 8-9.

Winslow Public Schools, under the direction of the Winslow School Committee a/k/a Winslow School Board (WSC),[2] operates Winslow Elementary School, Winslow

---

[2]    Mr. Fortuna says that "Winslow School Committee a/k/a Winslow School Board (WSC) is a

9

Junior High School, and Winslow High School in Kennebec County, Maine. *Id.* ¶¶ 10-12. Peter Thiboutot serves as the superintendent of the Winslow Public Schools. *Id.* ¶ 13. At all times material to this case, the WSC and Superintendent Thiboutot acted under color of state law and enjoyed policy-making authority related to the masking policy. *Id.* ¶¶ 11, 13.

### C. The COVID-19 Pandemic

COVID-19 is an airborne virus and is transmitted through aerosols. *Id.* ¶ 24. As of June 9, 2022, there have been 191,438 confirmed cases of the COVID-19 virus in Maine, 74,133 probable cases, 5,051 COVID-19 hospitalizations, and 2,401 COVID-19 deaths. *COVID-19: Maine Data*, ME. CDC, https://www.maine.gov/dhhs/mecdc/infectious-disease/epi/airborne/coronavirus/data.shtml (last visited June 9, 2022). As of June 9, 2022, Maine CDC data showed that 67,379 Maine residents under the age of twenty had contracted the COVID-19 virus, representing 25.4% of the total cases in the state. *See id.* (providing a share of cases by age group). As of June 9, 2022, young people under the age of twenty represent the highest share of COVID-19 cases in Maine, followed by people in their twenties representing 15.9% of all cases. *Id.*

### 1. COVID-19 Prevention and Mitigation Strategies

Physical distancing, frequent hand washing, proper ventilation and voluntary vaccination all indisputably mitigate the spread of COVID-19 and do not negatively

---

subdivision of the Town of Winslow," *Second Am. Compl.* ¶ 11, however "local school committees are agents of the state and are legally distinguished from municipalities." *Pickering v. Town of Sedgwick*, 628 A.2d 149, 150 (Me. 1993).

impact the physical or mental wellbeing of children during school. *Second Am. Compl.* ¶¶ 30, 33. Spacing children three feet apart while seated in a classroom under a teacher's supervision, according to the CDC, prevents transmission of airborne virus particles. *Id.* ¶¶ 31-32.

Mr. Fortuna alleges that the airborne COVID-19 virus is too small to be filtered, so "masks are ineffective to prevent aerosol transmission and thus ineffective to prevent transmission of the COVID-19 virus." *Id.* ¶¶ 24-26. He says studies on face mask effectiveness published between 2008 and 2020 demonstrate that masks are ineffective in combatting the spread of respiratory infections. *Id.* ¶¶ 34-35, 37. Mr. Fortuna cites a 2015 study for the proposition that a "cloth facemask, when worn by a child, may actually increase the risk of transmission of the virus." *Id.* ¶ 42. He says that the School Defendants should have focused on distancing, hand washing, and other measures because these mitigation strategies are more effective and, "unlike masking, do not negatively impact the physical or mental wellbeing of children during school." *Id.* at ¶ 30-33.

### 2. The Impact of Masking Children

Mr. Fortuna submits that "the imposition of facemasks on children inhibits the child's ability to learn, as well as imposes serious physical and psychological harm on the child." *Id.* ¶ 38. He cites a recent pre-print, not-yet-peer reviewed, study funded by the National Institutes of Health and conducted by researchers from Rhode Island Hospital and Brown University which found that "masks worn in public settings and in school or daycare settings may impact a range of early developing skills, such as

attachment, facial processing, and socioemotional processing." *Id.* ¶ 41 (citing Sean Deoni et al., *Impact of the COVID-19 Pandemic on Early Child Cognitive Development: Initial Findings in a Longitudinal Observational Study of Child Health*, MEDRXIV [Preprint] (Aug. 10, 2021)).  Mr. Fortuna also cites recent studies suggesting that masking affects babies' speech and language development and children's mental health, *id.* ¶¶ 43-44, and an article questioning the justification for "the CDC's no-end-in-sight mask guidance for the very-low-risk pediatric population, particularly post-vaccination." *Id.* ¶ 45 (quoting Smelkinson et al., *The Case Against Masks at School*, THE ATLANTIC (Jan. 26, 2022), https://www.theatlantic.com/ideas/archive/2022/01/kids-masks-schools-weak-science/621133/).

### 3. The Risk of COVID-19 for Children

Because "common influenza is a greater health threat to children than [COVID-19]," Mr. Fortuna says "that [COVID-19] presents little, if any, health risk to children." *Id.* ¶ 5.  Mr. Fortuna suggests "the detrimental effects of forcing his daughter to wear a mask," which he says are distraction from learning, increased blood carbon dioxide levels, susceptibility to pathogens, and the elimination of non-verbal communication, "outweigh the comparatively slight risk of becoming seriously ill from [COVID-19]." *Id.* ¶¶ 6-7.

Mr. Fortuna submits that "the risk of catching and dying from [COVID-19] for someone under thirty years of age, even without the vaccine[,] is near .001%." *Id.* ¶

40.  Citing child hospitalization rates[3] and data on improved outcomes for vaccinated individuals, Mr. Fortuna says that "there is no evidence whatsoever that the [D]elta variant," cited by the School Defendants as a reason for imposing the masking policy, "poses an increased risk to children, vaccinated or unvaccinated."  *Id.* ¶¶ 27-28.

Noting that the School Defendants have not required that all teachers be vaccinated, Mr. Fortuna submits that the mask mandate was implemented "to protect and prioritize teachers," the teachers union, and the Winslow Schools' receipt of federal funding "at the expense of the health and education of the children."  *Id.* ¶¶ 64-66.

### 4.  Developments in the COVID-19 Pandemic

On or about May 13, 2021, the CDC determined that masks were not recommended for those twelve years of age or older who were fully vaccinated.  *Id.* ¶ 17.  After this statement, the National Education Association, one of the largest unions in the United States, sent an email to the CDC indicating it was prepared to criticize the CDC's decision and calling for updated guidance that masks should be worn specifically in schools.  *Id.* ¶ 18.  The following day, the CDC released updated masking guidelines for schools indicating universal masking should be enforced.  *Id.* ¶ 19.

---

[3]      The CDC reported that for the week of August 7, 2021, the rate of hospitalization for children 5 to 17 with COVID-19 was 0.9 per 100,000.  *Second Am. Compl.* ¶ 28.  The CDC acknowledged that not all of these children were initially hospitalized because of COVID-19; viral testing at admission is routine, even for patients who have no COVID-19 symptoms.  *Id.*

On July 27, 2021, the CDC released updated guidance, urging increased COVID-19 vaccination coverage and recommending that people in substantial or high COVID-19 transmission areas wear a mask in public indoor places regardless of vaccination status.   Christie, A. et al., *Guidance for Implementing COVID-19 Prevention Strategies in the Context of Varying Community Transmission Levels and Vaccination Coverage*, 70 MORBIDITY AND MORTALITY WKLY. REP. 1044, 1044 (2021) (*Guidance for Implementing COVID-19 Prevention Strategies*); *see also What You Need to Know About Variants*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (last updated Apr. 26, 2022; last visited June 12, 2022).

The CDC stated that it based this new guidance on several concerning developments, including new data indicating that the COVID-19 Delta variant was more infectious and transmissible compared to other variants, even among vaccinated individuals. *Guidance for Implementing COVID-19 Prevention Strategies* at 1044.  On August 4, 2021, the CDC further updated its guidance for schools "to recommend universal indoor masking by all students, staff, teachers, and visitors to K-12 schools, regardless of vaccination status."  *Operational Guidance for K-12 Schools and Early Care and Education Programs to Support Safe In-Person Learning*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html (last updated May 27, 2022; last visited June 12, 2022).

After the CDC updated its guidance and before the start of the 2021-2022 school year, the MDOE and Maine CDC recommended that school districts follow the

national CDC's latest masking recommendations. *See Priority Notice: Health and Safety Guidance for PreK-12 Schools in Maine*, ME. DOE, https://mailchi.mp/maine/cu5lemq6y0-1323560?e=b687676d5b (last visited June 12, 2022) ("[O]ur state will continue to adhere to the US CDC's 'Guidance for COVID-19 Prevention in K-12 Schools'"); *Frequently Asked Questions Regarding COVID-19 and Return to School*, ME. DOE, at 3, https://www.maine.gov/doe/sites/maine.gov.doe/files/2021-08/Q%26A%20webinar%207.29.21.pdf (published Aug. 2, 2021; last visited June 12, 2022) ("Maine CDC recommends that school district[s] follow the U.S. CDC recommendation that all students, staff, teachers, and visitors wear a mask while indoors in schools"). The Maine CDC and MDOE further instituted different COVID-19 contract tracing quarantine requirements for schools without mandatory masking policies in place. *Standard Operating Procedures (SOP): Investigation of COVID-19 in Pre-K-12 Schools*, ME. CDC, at 7 https://www.maine.gov/doe/sites/maine.gov.doe/files/inlinefiles/SOP%20Investigating%20Outbreaks%20in%20K-12%20Schools%2010%2029%202021.docx.pdf (revised Oct. 29, 2021) ("Close contacts must quarantine for 10 days from last COVID-19 exposure from school and school activities . . . [unless] the school has a mandatory masking policy. If so, then an exposed classroom student does not need to quarantine from regular school-day activities when the student close contact was at least 3 feet from an infected student").

In February 2022, the CDC released a new "COVID-19 Community Levels" tool that classifies the COVID-19 risk as low, medium, or high in individual counties "to help communities decide what prevention steps to take based on the latest data." *COVID-19 by County*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/your-health/covid-by-county.html (updated Mar. 24, 2022; last visited June 12, 2022) (*CDC Community Levels Tool*). In its new recommendations, which it specifically extended to the school setting, the CDC revised its guidance to recommend imposing mask mandates when COVID cases and hospitalizations are high on a county-by-county basis. *COVID-19 Community Levels*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/science/community-levels.html (updated Mar. 24, 2022; last visited June 12, 2022) (recommending indoor mask use "regardless of vaccination status . . . in K-12 schools and other indoor community settings" when local case levels are high).

At this stage in the pandemic, Maine health officials are revisiting the necessity of mask mandates and some school districts are making mask-wearing optional. *Second Am. Compl.* ¶¶ 48-49. In February 2022, the Governors of New Jersey, Connecticut, Nevada, Rhode Island, and Pennsylvania announced that their respective states would be ending statewide school mask mandates. *Id.* ¶¶ 50-51, 54, 56-57. In Delaware, the Governor recently allowed the statewide Indoor Mask Mandate to expire. *Id.* ¶ 52. The Massachusetts Department of Elementary and Secondary Education announced plans to lift its mask mandate on February 28, 2022. *Id.* ¶ 53. The Oregon Health Authority also announced that indoor mask requirements in Oregon would be lifted no later than March 31, 2022. *Id.* ¶ 55.

### D.     Winslow Public Schools' Mask Mandate

On August 1, 2021, Superintendent Thiboutot posted a message on the Winslow School Department website to notify parents that:

> One of the biggest changes the CDC has strongly recommended calls for universal indoor masking for all teachers, staff, students, and visitors to K-12 schools, regardless of vaccination status.  Children should return to full-time in-person learning in the fall with layered prevention strategies in place.
> . . .
> The administrative team along with the school nurses and feedback from our Medical Provider met again this week to discuss the revised CDC recommendations.  A unanimous decision was made to recommend to the board that we enact the CDC recommendations as a component of our return to school plan.

*Id.* ¶ 20.

On August 16, 2021, the School Committee implemented the CDC recommendations by enacting a mandatory mask policy requiring all students, regardless of vaccination status, pre-existing medical condition, classroom size, or age to wear masks while indoors at school.  *Id.* ¶¶ 3, 21.  For any medical procedure, parental consent for a minor is obtained.  *Id.* ¶ 47.  In the context of the School Committee's mask mandate, no such consent was allowed by allowing the parents to choose whether to require their child to wear a mask.  *Id.* ¶ 47.  According to Superintendent Thiboutot's August 1, 2021, message to the school community, the sole basis for the August 16 mask mandate was the emergence of the Delta variant. *Id.* ¶ 27.

On Monday, March 7, 2022, the Winslow School Committee voted to make masks optional in the Winslow Public Schools based on updated guidance from the

MDOE and public health authorities. *Resp. to Ct.'s Order* at 1 (ECF No. 30). The new optional mask policy took effect on March 9, 2022. *Id.* Before or around March 2022, other Maine towns and schools voted to make mask wearing optional for children. *Second Am. Compl.* ¶¶ 48-49, 50-57.

Looking ahead, as the Winslow School Committee has indicated it follows CDC guidance and as the CDC previously modified its recommendations on universal masking, from allowing vaccinated students to remove masks to recommending universal masking regardless of vaccination status, there is a demonstrated probability that Winslow School Committee will reimpose the same or similar mask mandate in the future in accordance with public health guidance. *Id.* ¶ 69.

## III.   THE PARTIES' POSITIONS

### A.   The School Defendants' Motion to Dismiss

The School Defendants urge the Court to dismiss Mr. Fortuna's Second Amended Complaint for failure to state a claim. *Defs.' Mot.* at 1. They say Mr. Fortuna seeks to have this Court overturn the decision of the Winslow School Committee simply "because he does not agree with [the masking policy]" or with the recommendations of the CDC, Maine CDC, and the MDOE. *Id.* at 2. They contend that Mr. Fortuna's complaint "relies on outdated studies" on mask effectiveness, "ignores data establishing that although the majority of children do not develop the worst of COVID-19's symptoms, a certain percentage have died or been severely impacted," and makes inconsistent references to CDC guidance. *Id.* at 2 & n.2.

The School Defendants reason that "the evidence from scientific and medical experts is overwhelming that mask use indoors – particularly in the school setting where a large percentage of the population is too young to be vaccinated – is an effective means of protecting against infection." *Id.* at 2-3. Citing the Supreme Court's statement that "[i]t is not the role of the federal courts to set aside decisions of school administrators" in their informed discretion and judgment, the School Defendants note that "this Court need not rule on the efficacy of mask use in order to resolve this case." *Id.* at 3 (quoting *Wood v. Strickland*, 420 U.S. 308, 326 (1975)). They insist that Mr. Fortuna "has pled no facts – nor could he – that could turn the School Defendants' decision to mandate masks for the protection of students, staff and the community into a violation of his constitutional rights." *Id.*

The School Defendants first urge the Court to apply *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), to Mr. Fortuna's substantive due process challenge to a public health restriction. *Id.* at 11 (citing recent federal court cases applying *Jacobson* to COVID-19 vaccination requirements and mask mandates). The School Defendants submit that, as in *Jacobson*, the Winslow mask mandate "cannot be affirmed to be, beyond question, in palpable conflict with the Constitution" nor "can anyone confidently assert that the means prescribed by the State to that end has no real or substantial relation to the protection of the public health and the public safety." *Id.* at 12 (quoting *Jacobson*, 197 U.S. at 31). Alternatively, "even if *Jacobson* does not apply," the School Defendants argue this due process challenge "is still only subject to rational basis review," despite Mr. Fortuna's insistence that the mask

19

mandate interferes with his fundamental right to raise his child and make medical care decisions for her. *Id.*

The School Defendants acknowledge the line of Supreme Court cases recognizing the fundamental rights of parents and the liberty to refuse medical treatment but maintain that the Second Amended Complaint "fails to plausibly plead that the mask policy directly infringes on either of those rights." *Id.* at 12. Applying rational basis review, the School Defendants contend that "[p]reventing the transmission of COVID-19 is, at the very least, a legitimate government purpose." *Id.* at 13 (citing *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) ("Stemming the spread of COVID-19 is unquestionably a compelling interest . . . .")). They reason that "CDC guidance and the studies and data upon which that guidance is based show that universal masking is rationally related to this goal." *Id.* The School Defendants further insist that the mask mandate "easily passes muster under rational basis review" because "decreasing the risk that entire classes will be required to move to remote learning every time there is an exposure in a classroom is a legitimate governmental purpose, and given the MDOE rules, a universal mask mandate is rationally related to this goal." *Id.*

The School Defendants go on to address the standard applicable to Mr. Fortuna's claims against Superintendent Thiboutot "as Superintendent" and "in his individual capacity." *Id.* "[T]o the extent Mr. Thiboutot is sued in his official capacity," they reassert their previous arguments to urge the Court to dismiss the claims against him. *Id.* at 14. Otherwise, the School Defendants argue that the

20

Second Amended Complaint "fails to state a plausible substantive due process claim against" Superintendent Thiboutot in his personal capacity. *Id.* They reason that Superintendent Thiboutot's public message to parents on the School Department website "plainly does not rise to the level of conscience shocking because it does not even come close to being truly outrageous, uncivilized, and intolerable . . . nor does it infringe upon any fundamental right." *Id.* (internal citations and quotations omitted). The School Defendants note that the Second Amended Complaint "does not allege any other facts specific to Mr. Thiboutot." *Id.*

Next, the School Defendants urge the Court to take judicial notice pursuant to Federal Rule of Evidence 201 of facts related to the COVID-19 pandemic and school mask mandates from the websites of the CDC, the Maine CDC, and the MDOE. *Id.* at 4 (citing decisions in which the First Circuit and other circuit courts took judicial notice of information from government websites and other government sources).

The School Defendants go on to recite Maine's COVID-19 infection, hospitalization, and death rates, emphasizing that "[a]s of October 18, 2021, Maine CDC data showed that 20,897 Mainers between the ages of 0-19 had contracted the COVID-19 virus." *Id.* at 5. Quoting the CDC's warning that "[s]ignificant secondary transmission of SARS-CoV-2 infection has occurred in school settings when prevention strategies are not implemented or are not followed," the School Defendants state that young people can catch, become ill with, and spread COVID-19. *Id.* In particular, they recount the CDC's October 2021 guidance for minimizing risk of transmission in the K-12 setting, noting that Mr. Fortuna "acknowledges the

efficacy of many of these measures." *Id.* at 6.  The School Defendants point to the CDC's mask efficacy studies and past recommendations promoting universal indoor masking, regardless of vaccination status, to reduce COVID-19 transmission, particularly in light of the highly virulent and transmissible Delta variant. *Id.* at 5-6.

The School Defendants emphasize that the MDOE recommended school compliance with CDC guidance, and established stricter quarantine requirements for students exposed to a positive case in schools without mandatory masking than in schools with such a policy. *Id.* at 7-8.  They also explain that under the MDOE protocol "schools without mask mandates will be required to move groups of students or, in some circumstances, entire classrooms to remote learning for ten days any time there has been an exposure, whereas those with mask mandates will not." *Id.* at 8.

The School Defendants urge that, because they acted pursuant to national and local public health guidance, Mr. Fortuna cannot meet the standard to sustain his substantive due process claim against a state government actor. *Id.* at 10.  According to the School Defendants, the Second Amended Complaint merely alleges that Winslow Public Schools followed CDC guidance to adopt a mask policy, "consistent with the conduct of public and private entities throughout the State of Maine and across the country," which "does not even come close to meeting the conscience shocking standard." *Id.*

Addressing Mr. Fortuna's suggestion that the CDC only updated its masking guidelines in anticipation of criticism from the National Education Association, they

argue this "speculative allegation must give way to the judicially noticeable" information from the CDC "which show[s] that the CDC changed its guidance based on several 'concerning developments' resulting from the spread of the Delta variant." *Id.* at 10-11. Even crediting Mr. Fortuna's allegation that the National Education Association influenced the CDC's assessment, the School Defendants submit "that would not make it any less reasonable for the Winslow School Department to rely on the CDC's recommendations in formulating its mask policy." *Id.* at 11.

The School Defendants call Mr. Fortuna's "allegation that the COVID-19 virus does not pose a significant health threat to children [] untrue and implausible," defending their mask policy as "plainly proportional to the risk posed to students by the COVID-19 virus." *Id.* They conclude by reiterating that Mr. Fortuna has failed to state a claim against any of the named defendants upon which relief may be granted. *Id.* at 14.

### B. Scott Fortuna's Opposition

Mr. Fortuna insists that his claim that the School Defendants' mask mandate infringed upon his fundamental right to parent must survive this motion to dismiss. *Pl.'s Opp'n* at 5.

First, Mr. Fortuna urges the Court to apply the Supreme Court's substantive due process standard for legislative branch actions to the School Defendants rather than the higher "shock the conscience" threshold applicable to executive actions. *Id.* at 6. According to Mr. Fortuna, the Winslow School Committee and Winslow Public

Schools are "composed of a group of elected officials" and are thus "[l]egislative bodies of local school administrative units." *Id.* (citing 20 M.R.S. § 2(2)).

Mr. Fortuna goes on to argue that *Jacobson* is distinguishable because here his "fundamental right to parent his child is being infringed," and furthermore, the *Jacobson* Court "applied what was in essence rational basis review to deem [a Massachusetts vaccine law] constitutional." *Id.* at 9-10 (citing *Roman Cath. Diocese*, 141 S. Ct. at 70-71 (Gorsuch, J., concurring)). He also reasons that, unlike the law in *Jacobson*, the mask mandate at issue here lacks any alternatives or exceptions. *Id.* at 10.

Mr. Fortuna submits that his burden is to show that the School Defendants' conduct infringed upon his protected rights, asserting that "[a]s the mask mandate implicates a fundamental right, it must be subjected to strict scrutiny." *Id.* at 8. He argues that cases applying rational basis review to equal protection classifications are inapplicable because he "is not alleging the mask mandate treats him or his daughter differently." *Id.* at 10 n.1. Mr. Fortuna asserts that the mask mandate, "without any substantive or temporal limitations, and without any alternatives," infringes on his "fundamental right to parent his child by making the medical decision that Mr. Fortuna's child needs to wear a mask for eight hours a day." *Id.* at 7-8.

Mr. Fortuna argues that the School Defendants' mask policy "cannot be rationally related to a legitimate Government interest" to survive rational basis review "because numerous, peer-reviewed studies overwhelmingly support the conclusion that facemasks are ineffective at preventing transmission" of COVID-19.

24

*Id.* at 10-11.  He alleges that "children are at low risk" of contracting COVID-19 and "do not play a significant role in the spread of the virus," and moreover, that masks are ineffective at filtering out virus particles and "actually increase the risk of children becoming sick."  *Id.* at 11.  He also asserts that "forcing children to wear masks 8 hours a day inhibits breathing and leads to the collection of dangerous impurities," has "negative health and societal ramifications," and "adversely affects" student performance and communication.  *Id.*

Mr. Fortuna argues that "[g]iven the CDC's conclusion that the common flu is a greater threat to children than COVID-19, the [School Defendants'] policy at issue does not serve a compelling government interest."  *Id.* at 8.  "Moreover, even if the government had a legitimate interest in preventing coughs, sneezes and runny noses, the subject policy is not remotely narrowly tailored to achieve this end because it has no end date, no exceptions or alternatives, and may be accomplished by other means" such as social distancing.  *Id.* at 8-9.  Mr. Fortuna argues that Superintendent Thiboutot and the School Defendants were motivated by the "substantial funding" that they receive from the federal government to make the conscious-shocking choice to "prioritiz[e] federal dollars at the expenses of children's welfare."  *Id.* at 12-13.

Mr. Fortuna concludes by insisting Superintendent Thiboutot's conduct implicates his fundamental rights for the same reasons explained as to the other School Defendants.  *Id.*  He asserts that Superintendent Thiboutot "played a crucial role in drafting and implementing the mandatory mask policy," despite a lack of precedent for such measures, with conscious-shocking disregard for "data showing

the harmful effects of masking children." *Id.* Because "the mandatory mask policy is not based upon scientific data" but rather was "implemented to satisfy a powerful [teachers] Union[,]" Mr. Fortuna says "Mr. Thiboutot's action in blindly following the CDC's misguided policy amounts to more than mere negligence" to meet the "conscience shocking" standard. *Id.* at 12.

In his February 24, 2022, request to amend, Mr. Fortuna noted that "[s]ince the filing of the First Amended Complaint, there have been significant developments across the Count[r]y in regards to mask mandates for school children" which he urges the Court to consider in resolving the School Defendants' motion to dismiss. *Pl.'s Mot. to Amend* ¶¶ 4, 8 (collecting news articles regarding the lifting of mask mandates in other states, cities, and school districts).

## C.   The School Defendants' Reply

The School Defendants maintain that "[s]temming the spread of COVID-19 is unquestionably a compelling interest," *Defs.' Reply* at 1 (quoting *Roman Cath. Diocese*, 141 S. Ct. at 67), and that their "mask policy is both reasonable and rationally related to this goal." *Id.* They submit that Mr. Fortuna's opposition to their motion to dismiss "relies on facts not pled in the First Amended Complaint and vague legal arguments unsupported by any relevant authority." *Id.*

First, the School Defendants address Mr. Fortuna's argument that they represent a legislative body not subject to the "shocks the conscience" standard for executive actions. *Id.* at 1-2. They note that he "challenges a school policy, not a

26

statute enacted by the Maine legislature," and insist he "fails to plausibly plead any conscious shocking conduct" in order to sustain his claims.  *Id.* at 2.

Next, the School Defendants argue that the mask policy does not infringe upon any of Mr. Fortuna's fundamental rights, and again urge the Court to apply rational basis review.  *Id.*  Citing *Parents for Privacy v. Barr*, 949 F.3d 1210 (9th Cir. 2020), the School Defendants say that the Supreme Court's recognition of parents' rights to "make decisions concerning the care, custody, and control of their children" does not support Mr. Fortuna's argument that the mask policy implicates a fundamental right. *Id.* at 2-3.  The School Defendants reason that "[t]he fundamental right recognized in *Troxel v. Granville*, 530 U.S. 57 (2000), is not absolute; rather, it is subject to reasonable regulation to protect the public interest."  *Id.* at 3.  They submit that "the only other case that Plaintiff cites in his discussion of the applicable standard . . . supports the School Defendants' argument that the mask policy is subject only to rational basis review."  *Id.* at 3-4.

In their February 25, 2022, filing in opposition to Mr. Fortuna's motion to amend, the School Defendants insist that the new factual allegations in the Second Amended Complaint "make absolutely no difference to the conscience-shocking analysis."  *Defs.' Opp'n to Mot. to Amend* at 3.  The School Defendants submit that "[t]he fact that some commentators disagree with the CDC's mask recommendation and that some states and school districts have chosen to lift mask mandates does not somehow transform the School Department's reasonable decision to require students to wear masks indoors into 'a brutal and inhumane abuse of official power literally

shocking to the conscience.'" *Id.* (quoting *Harron v. Town of Franklin*, 660 F.3d 531, 536 (1st Cir. 2011)).

They contend that Mr. Fortuna's new "allegations also do not change the level of scrutiny that applies to [his] substantive due process claim," which they maintain is "subject only to either rational basis review or review under the standard set forth in *Jacobson*." *Id.* The School Defendants conclude that "because the School Department has articulated a plausible justification for its decision" sufficient under either standard, "[t]he fact that other school districts have made a different choice is irrelevant." *Id.* at 3-4.

## IV.   LEGAL STANDARD

Rule 8(a) of the Federal Rules of Civil Procedure requires that a plaintiff's complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). According to the United States Supreme Court, "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 41 (1st Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). Deciding a motion to dismiss under Rule 12(b)(6) is a two-step analysis. *Schatz v.*

*Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012).  First, a court "isolate[s] and ignore[s] statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements."  *Id.*  Second, a court "take[s] the complaint's well-pled . . . facts as true, drawing all reasonable inferences in the pleader's favor, and see[s] if they plausibly narrate a claim for relief."  *Id.*  "'If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture,' dismissal is proper."  *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021) (quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010)).

## V.    DISCUSSION

Mr. Fortuna's Second Amended Complaint asserts a single claim under 43 U.S.C. § 1983 for violation of his substantive due process rights.  The School Defendants' motion to dismiss thus turns on whether Mr. Fortuna sufficiently alleged a violation of a fundamental right warranting strict scrutiny or, alternatively, if strict scrutiny does not apply, whether the School Defendants have demonstrated that the mask policy was rationally related to a legitimate government interest to withstand rational basis review or review under *Jacobson*.

### A.    The Applicable Level of Scrutiny

#### 1.    The School Defendants' Mask Mandate Does Not Implicate A Fundamental Right

Other school mask mandate challenges have attempted to invoke fundamental rights to privacy, personal autonomy, and bodily integrity, as well as constitutional protections under the First, Fourth, and Eighth Amendments and under state law.

29

*See, e.g., Donohue v. Hochul*, No. 21-CV-8463 (JPO), 2022 U.S. Dist. LEXIS 32011, at *9 (S.D.N.Y. Feb. 23, 2022). In this case, however, Mr. Fortuna narrowly asserts that the Due Process Clause of the Fourteenth Amendment extends to his "fundamental right to make decisions concerning the medical care of his child." *Second Am. Compl.* ¶ 59. Pursuant to this argument, he relies on *Troxel v. Granville*, 530 U.S. 57, to assert that the School Defendants' mask policy infringes upon his "fundamental liberty interest" in directing his child's upbringing and education. *Id.* ¶ 2. As the Ninth Circuit recognized in *Parents for Privacy*, the *Troxel* Court "did not address the extent of parents' rights to direct the policies of the public schools that their children attend." 949 F.3d at 1230-31. Although "the custody, care and nurture of the child reside first in the parents," when "[a]cting to guard the general interest in youth's well being, the state as parens patriae may restrict the parent's control," including by setting conditions on school attendance. *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944); *see also Parents for Priv.*, 949 F.3d at 1231. Courts have long recognized that "the state has a wide range of power for limiting parental freedom and authority in things affecting the child's welfare." *Prince*, 321 U.S. at 167.

Applying these principles, Mr. Fortuna's right to parent, as recognized in *Troxel*, is not absolute. Whatever rights Mr. Fortuna as a father has over his child, the plain fact is that his child does not attend school alone. Once his child is in school, Mr. Fortuna's parental rights must be measured against the equal rights of other parents to control their children and the duty of the school to provide a safe environment for all children, not just Mr. Fortuna's child, and for others who work or

volunteer in the school. This point is particularly salient during a pandemic, where his child could contract COVID-19 from others in the school community, and they could contract it from her. Thus, Mr. Fortuna's parental rights must be the beginning, not the end, of the conversation. Faced with potentially conflicting parental positions, the school district must be the arbiter. Here, Winslow Public Schools adopted the mask policy and Mr. Fortuna has not shown that the mask policy, enacted to protect student welfare and the public interest, infringes on a balanced assessment of his individual parental rights.

Moreover, other courts resolving legal challenges to mandatory school masking policies have consistently rejected the argument that such policies infringe on a fundamental parental right. *See, e.g.*, *Case v. Ivey*, 542 F. Supp. 3d 1245, 1281 (M.D. Ala. 2021) ("While it is true that the Supreme Court has long recognized that a fundamental right exists 'to direct the education and upbringing of one's children,' . . . the court is skeptical that such a right is broad enough in scope to encompass an interest in keeping one's children from wearing a mask during a global pandemic" (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997))).

Consistent with these courts, the Court therefore rejects Mr. Fortuna's argument that the School Defendants' mask policy violates a fundamental right warranting the application of strict scrutiny to his due process claim.

### B. The Merits of Scott Fortuna's Due Process Challenge

The Court next considers the merits of Mr. Fortuna's due process claim under the otherwise applicable legal standards.

1.    **Scott Fortuna's Mask Mandate Challenge Fails Under**
      ***Jacobson***
      a.      **Due Process and Public Health Measures**

This District previously looked to *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), in determining the standard of review for state public health measures implemented to quell the spread of COVID-19.[4]  *See, e.g.*, *Doe*, 2021 U.S. Dist. LEXIS 197251, at *16-17 & n.12 (applying *Jacobson* in concluding that a healthcare worker vaccine mandate promotes the public interest).  In *Jacobson*, the Supreme Court "applied a deferential standard of review and rejected a Fourteenth Amendment substantive due process challenge to the law, concluding that the mandatory vaccination law was constitutional because it had a 'real [and] substantial relation to the protection of the public health and the public safety.'"  *Id.* at *16 (alteration in *Doe*) (quoting *Jacobson*, 197 U.S. at 31) (noting that the *Jacobson* Court did not specifically address the "scope of an individual's constitutional rights under the First Amendment's Free Exercise Clause in relation to mandatory vaccines").

The Court follows the lead of the courts of this District and other federal courts that have applied *Jacobson*'s deferential standard of review to substantive due process challenges to vaccination requirements, mask mandates, and other COVID-19 restrictions.  *See, e.g.*, *Klaassen v. Trs. of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021); *Forbes v. Cty. of San Diego*, No. 20-cv-00998-BAS-JLB, 2021 U.S. Dist. LEXIS 41687, at *8-9 (S.D. Cal. Mar. 4, 2021); *Hopkins Hawley LLC v. Cuomo*, 518 F. Supp.

---

[4]      The Court acknowledges that the Supreme Court decided *Jacobson* before the Supreme Court applied selective rights under the Bill of Rights to the states and before the Supreme Court adopted tiers of scrutiny for constitutional questions.  However, the District Court in *Doe* effectively addressed this issue.  *Doe*, 2021 U.S. Dist. LEXIS 197251, at *16 n.12.

3d 705, 710-13 (S.D.N.Y. Feb. 9, 2021) ("[B]ecause *Jacobson* provides a workable framework that balances the delicate considerations at play—responding to the COVID-19 crisis versus maintaining Constitutional liberties—it must govern this case"); *Young v. James*, No. 20 Civ. 8252 (PAE), 2020 U.S. Dist. LEXIS 198392, at *7 (S.D.N.Y. Oct. 26, 2020).   Although the Supreme Court questioned *Jacobson* in *Roman Catholic Diocese*, 141 S. Ct. at 67, here "no free exercise claim is at issue," as Mr. Fortuna challenges a mask mandate under substantive due process, not a vaccine requirement under the Free Exercise Clause.  *Hopkins Hawley*, 518 F. Supp. 3d at 712-13 (concluding that "because the[] facts [concerning pandemic indoor dining restrictions] more directly align with those found in *Jacobson*, the Court . . . must apply *Jacobson*'s deferential legal standard").

Mr. Fortuna's challenge is not based on religious freedom, and *Jacobson* "commands a deferential standard for analyzing Fourteenth Amendment challenges to generally applicable public health measures like the [substantive due process] one here." *Harris v. Univ. of Mass.*, No. 21-cv-11244-DJC, 2021 U.S. Dist. LEXIS 162444, at *17 (D. Mass. Aug. 27, 2021) (citing *Roman Cath. Diocese*, 141 S. Ct. at 70 (Gorsuch, J., concurring)) (explaining that *Jacobson* is "essentially . . . rational basis review").  Given *Jacobson*'s applicability to the mask mandate at issue here, the Court assesses Mr. Fortuna's challenge under its deferential legal standard for public health laws.

> **b.    Applying *Jacobson* to the Winslow Public Schools' Mask Mandate**

Under *Jacobson*, the Court considers whether the School Defendants' mask mandate lacks a "real or substantial relation" to public health and safety, whether the mask mandate is "beyond all question, a plain palpable invasion of rights secured by fundamental law," and whether it is so arbitrary and oppressive as to warrant judicial interference. *See Jacobson*, 197 U.S. at 31-38.

The Court first considers whether Mr. Fortuna has plausibly stated a claim that there is no real or substantial relation between the School Defendants' mask mandate and the COVID-19 pandemic. The Court concludes that he has not. Mr. Fortuna's pleading does not plausibly state that the mask policy lacks a legitimate public health purpose or that it is a serious and oppressive invasion of rights under *Jacobson*.

First, in 2020, the Supreme Court wrote that "[s]temming the spread of COVID-19 is unquestionably a compelling interest." *Roman Cath. Diocese*, 141 S. Ct. at 67. Thus, the School Defendants have a "compelling" interest in controlling the spread of COVID-19 in Winslow Public Schools. *See id.* The School Defendants explained at the time, and maintain today, that they crafted a policy to achieve that interest and give students the benefits of in-person school while minimizing health risks to the entire school community as the pandemic stretched into the 2021-2022 school year. *See Second Am. Compl.* ¶¶ 20, 27.

Second, as stated in Mr. Fortuna's Second Amended Complaint, the School Defendants' decision to require masks for all, regardless of vaccination status, was made in accordance with CDC, Maine CDC, and MDOE guidance as of August 2021,

following consultation with Winslow Public Schools' nurses and medical provider. *Id.* ¶ 20. The School Defendants designed their COVID-19 mitigation strategy to be consistent with CDC guidance "strongly recommend[ing] . . . universal indoor masking for all teachers, staff, students, and visitors to K-12 schools, regardless of vaccination status" in order to allow Winslow students "to return to full-time in-person learning in the fall with layered prevention strategies in place." *Id.* ¶¶ 19-20. Accepting Mr. Fortuna's critique of masking, regardless of whether the CDC's analysis is actually correct, it was not unreasonable for the School Defendants to rely on guidance published by public health experts and adapt their policies as the state of the pandemic changed.

Third, the availability and efficacy of vaccines does not undermine the School Defendants' decision to require masks regardless of vaccination status. As of June 9, 2022, pursuant to its latest "Community Levels" guidance, the CDC continues to promote mask use as part of its recommended prevention strategy for counties at medium or high risk of COVID-19 transmission and in indoor public transportation settings, and otherwise for immunocompromised individuals, those at high risk for severe disease, those who cannot be vaccinated, and for those who have been exposed to COVID-19. *See CDC Community Levels Tool.*

Although public health experts have, and will continue to, disagree on the best way to navigate the COVID-19 crisis, that does not undermine the School Defendants' legitimate purpose, amid the rising case counts in Kennebec County at the start of the 2021-2022 school year, to enact a measure shown to help prevent disruptive

school closures, particularly given their informed assessment at that time that the new Delta "wave" posed an increased level of risk to the entire school community, including to vaccinated individuals. *See Jacobson*, 197 U.S. at 30 ("It is no part of the function of a court or a jury to determine which one of two modes was likely to be the most effective for the protection of the public against disease").  Nor does it eliminate the legitimate basis for the School Defendants' decision to rely on the guidance from public health experts or render their conduct pursuant to that guidance arbitrary and outrageous.

In light of the School Defendants' duty to protect their students during this unprecedented multi-year pandemic, which has involved cycles of increased and decreased risk from seasonal trends and the rise of new variants, the Court will not second guess the School Defendants' assessment that a mask requirement would help keep their school community safe, especially as the CDC has explicitly stated that it believes masking to be an effective means of preventing the spread of COVID-19. Ultimately, the masking requirement is neither arbitrary nor oppressive and is rationally related to public health efforts to curb the spread of COVID-19 in schools.

### c. Scott Fortuna's Critique of the Mask Mandate

In his Second Amended Complaint, Mr. Fortuna says the legitimacy of any interest that the School Defendants may have is undermined because "the efficacy of masks is a current subject of debate amongst experts." *Second Am. Compl.* ¶ 63. Even accepting Mr. Fortuna's contention that scientists dispute the efficacy and prudence of masks in the school setting, the Second Amended Complaint does not

36

dispute the benefits of masking referenced in the School Defendants' August 2021 announcement explaining their justification for the mandate. Nor does it provide the full context for many of the studies it cites as undermining the mandate's legitimacy.

For example, Mr. Fortuna cites a study that found that "masks worn in public settings and in school or daycare settings may impact a range of early developing skills, such as attachment, facial processing, and socioemotional processing." *Id.* ¶ 41 (quoting Sean Deoni et al., *Impact of the COVID-19 Pandemic on Early Child Cognitive Development: Initial Findings in a Longitudinal Observational Study of Child Health* (2021) (*COVID-19 and Cognitive Dev.*)).

Mr. Fortuna accurately quotes a selected portion of the Deoni study. But the Deoni study[5] examined more than just mask wearing in assessing the combined adverse effects of the pandemic on children. It concluded that "[w]hat is unclear from our data . . . is if observed declines or impairments are temporary and will normalize as employment and school closures are lifted and children return to pre-pandemic levels of play and interaction, and family financial insecurity and mental health challenges subside." *COVID-19 and Cognitive Dev.* The study emphasized that school closures, which the mask mandate was designed to help prevent, "may have dramatically changed the quantity and quality of parent, caregiver, and teacher-child

---

[5] As discussed earlier, on a motion to dismiss, the Court may consider "documents . . . incorporated by reference" in the Second Amended Complaint. *Young*, 717 F.3d at 231. As Mr. Fortuna cited the Deoni article on COVID-19 and child cognitive development, the Court incorporates the entire article to obtain a complete record of the study findings.

If the Court were to consider the Deoni article just as presented by Mr. Fortuna, without placing his quote in the context of the full article, Mr. Fortuna's reference to a selected portion of the article as support for his claim is incomplete and therefore too conclusory to remove the possibility of relief from mere conjecture. *See Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021).

interaction and stimulation." *Id.* It also linked school closures with "reduced social interaction, increased media consumption, and reduced physical activity" in older children and the potential for "impaired motor development, motor coordination and visual processing, language development, and socioemotional processing" in younger children. *Id.*

As the Court's analysis of the Deoni article suggests, overall Mr. Fortuna presents contradictory studies and news articles, choosing to trust some public health recommendations while discounting others. *See Forbes*, 2021 U.S. Dist. LEXIS 41687, at *13 (plaintiff's conclusory "contentions disputing the scientific basis for the Mask Rules are simply not enough to state a plausible cla[i]m that the rules are not rationally related to a legitimate government interest"); *Hopkins Hawley LLC*, 2021 U.S. Dist. LEXIS 24580, at *7 (plaintiffs' assertions that a COVID-19 policy "went against the grain of scientific proof" did not satisfy the high bar for the "shock the conscience" standard). The Court concludes that Mr. Fortuna's allegations related to the science and public health policy behind masking do not refute the legitimacy of the School Defendants' actions under *Jacobson* and are insufficient to sustain his due process claim.

> **d.     Other Communities' Handling of the Pandemic After the Delta and Omicron Variant Waves**

The Second Amended Complaint highlights the fact that other states and school districts have rolled back mask mandates, both before and contemporaneously with the School Defendants' decision to lift theirs. This reality, however, does not

render the School Defendants' conduct arbitrary and unreasonable, nor "conscious-shocking."

The Court notes that many of the announcements lifting statewide mask mandates that Mr. Fortuna cites took the position that, at this stage in the pandemic, masking policy is ideally left to the discretion of local decision makers—like the School Defendants.   Moreover, this does not invalidate the School Defendants' legitimate decision to follow public health guidance earlier in the pandemic and at the start of the school year.   For example, as Mr. Fortuna points out, Connecticut, Massachusetts, and New Jersey lifted statewide school mask mandates, while continuing to recommend masking in certain circumstances, in order to leave the decision up to superintendents and school boards who can be responsive to community conditions in real time. *See Second Am. Compl.* ¶¶ 50-57; *Press Release: Statewide School Mask Requirement Will Be Lifted February 28*, Mass. DOE, (Feb. 9, 2022), https://mailchi.mp/doe.mass.edu/press-releasestatewide-school-mask-requirement-will-be-lifted-february-28.   The Governor of Rhode Island explained that lifting the statewide mandate would "empower[] schools . . . to implement the health and safety measures best suited to the needs of their communities." *Second Am. Compl.* ¶ 56; *Governor McKee, RIDOH Announce Plan to Lift Statewide School Mask Mandate and Allow Masking Decisions to be Determined at the Local Level*, State of R.I. Governor Dan McKee, (Feb. 9, 2022), https://governor.ri.gov/press-releases/governor-mckee-ridoh-announce-plan-lift-statewide-school-mask-mandate-and-allow.

### 2.     The School Defendants' Mask Mandate Is Not "Conscious-Shocking" and Withstands Rational Basis Review

Even if *Jacobson* did not apply, the Court would apply traditional rational basis review to Mr. Fortuna's claim.  Under this standard, Mr. Fortuna would have the burden to demonstrate that the alleged "governmental infringement is not rationally related to a legitimate government purpose." *Mulero-Carrillo v. Román-Hernández*, 790 F.3d 99, 107 (1st Cir. 2015).  Mr. Fortuna maintains that "[g]iven the CDC's conclusion that the common flu is a greater threat to children than [COVID]-19," the School Defendants have no "interest in preventing coughs, sneezes and runny noses." *Second Am. Compl.* ¶ 61.  Even if they did, he submits that that mask mandate is not narrowly tailored because "it has no end date, no exceptions, and may be accomplished by other means" such as social distancing. *Id.* ¶ 62.  He says that "[w]ith the benefits of masking largely only providing a psychological benefit or a feeling of being protected" and "the harm done to [his] fundamental rights in addition to the actual risks of causing psychological harm to the child and impairing the child's ability to learn," the mask mandate cannot withstand "even rational basis review." *Id.* ¶ 68.

Accepting the allegations in his Second Amended Complaint, Mr. Fortuna still fails to plead a viable substantive due process claim. *See Hopkins Hawley*, 518 F. Supp. 3d at 712.  "[A]n abuse of power practiced by the executive branch of state government," which includes Maine school boards and school officials, "sinks to a level cognizable under the Due Process Clause only when it is so extreme and egregious as to shock the contemporary conscience." *DePoutot v. Raffaelly*, 424 F.3d 112, 118 (1st

Cir. 2005). Despite Mr. Fortuna's insistence otherwise, the School Defendants' actions are subject to this heightened "shock the conscience" threshold. *See Wadsworth v. Me. Sch. Admin. Dist. 40*, No. 2:19-cv-00577-JAW, 2020 U.S. Dist. LEXIS 183589, at \*17-18 (D. Me. Oct. 2, 2020) (applying the "shocks the conscience" standard to the conduct of a Maine school district and school officials); *Abdisamad v. City of Lewiston*, No. 2:19-CV-00175-LEW, 2019 U.S. Dist. LEXIS 122222, at \*4-5 (D. Me. July 23, 2019), *aff'd*, 960 F.3d 56 (1st Cir. 2020) (same). In addition to Mr. Fortuna's failure to demonstrate that the mask mandate implicates a fundamental right, the allegations in the Second Amended Complaint do not plausibly demonstrate that the School Defendants' conduct in enacting the mask requirement rose to the "conscience-shocking" level. *See Lloyd v. Sch. Bd. of Palm Beach Cnty.*, No. 9:21-cv-81715-KMM, 2021 U.S. Dist. LEXIS 210628, at \*29 (S.D. Fla. Oct. 29, 2021) (collecting cases in which federal courts "have found that mask mandates are not 'conscience-shocking in a constitutional sense'"); *Forbes*, 2021 U.S. Dist. LEXIS 41687, at \*12 ("Plaintiff does not plausibly state the Mask Rules shock the conscience"). Simply put, there is nothing "conscience-shocking" about a school district following the public health recommendations of the federal CDC, state CDC, and state DOE during an unprecedented pandemic.

### 3. Summary

The School Defendants acted pursuant to broadly accepted public health guidance encouraging masks in the school setting to minimize the spread of COVID-19. "Given the many reliable sources that establish masks as an effective means to

stop the spread of COVID-19," Mr. Fortuna's studies and news stories "at most establish[] scientific uncertainty and a debate between experts in the face of an ongoing public health crisis." *L.T. v. Zucker*, No. 1:21-CV-1034 (LEK/DJS), 2021 U.S. Dist. LEXIS 196906, at *27-28 (N.D.N.Y. Oct. 13, 2021).

As communities navigate and adapt to the unprecedented pandemic, courts "must afford substantial deference to state and local authorities about how best to balance competing policy considerations." *Roman Cath. Diocese*, 141 S. Ct. at 74 (Kavanaugh, J., concurring).   Local decision makers must be allowed to rely on recommendations given by reputable authorities such as state and federal public health experts.

Mr. Fortuna expresses his concern about the pandemic's impact on his child's social development and emotional health, and the Court appreciates his sense of parental duty to his view of the best interests of his child.   Even so, the School Defendants' policy was designed to ensure, as much as possible, that students, including but not limited to Mr. Fortuna's child, will be able to learn in school, with access to their peers, activities, routines, and support systems, five days a week.   The School Defendants reasoned that a mask policy, as recommended by the CDC, Maine CDC, and MDOE, would be an effective tool to prevent disruptive school closures, which place an enormous strain on families in this already challenging school year.

"Stemming the spread of COVID-19 is unquestionably a compelling interest," *Roman Cath. Diocese*, 141 S. Ct. at 67, and Court concludes that the School Defendants' mask policy is both reasonable and rationally related to that goal and

does not "shock the conscience."  Mr. Fortuna failed to meet the *Jacobson* or rational basis standard applicable to his substantive due process claim.

## VI.   CONCLUSION

Accordingly, the Court GRANTS the School Defendants' Motion to Dismiss and Renewed Motion to Dismiss Scott Fortuna's Second Amended Complaint for Failure to State a Claim (ECF Nos. 21, 38) and DISMISSES without prejudice Scott Fortuna's Second Amended Complaint (ECF No. 36).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 13th day of June, 2022.